**ASSOCIATION OF AMERICAN RAIL-ROADS, Plaintiffs,**

v.

**The UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**Civ. A. No. 540-73.**

United States District Court,
District of Columbia.

Feb. 20, 1974.

Richard J. Flynn, Chicago, Ill., for plaintiffs.

Hanford O'Hara, Interstate Commerce Commission, Washington, D. C., for defendants.

Before TAMM, Circuit Judge, and HART and PRATT, District Judges.

## OPINION

HART, District Judge:

By notice of proposed rule-making in Docket No. 35344, dated November 25, 1970, the Interstate Commerce Commission (Commission) stated that it had under consideration the revision of the annual reports of Class I railroad companies (Rail Form A), to require the reporting of additional data relating to transactions between carriers and their affiliates, additional financial data relating to Federal income taxes, and data concerning the source and application of funds, effective with reports of the year ending December 31, 1970. The Association of American Railroads (Association) has challenged the new Schedules insofar as they relate to the disclosure of Federal income tax information. The implementation of the disputed Schedules has been stayed by the Commission pending a determination by this Three-Judge Court convened pursuant to 28 U. S.C. § 2325.

The Commission proposes to replace the current Schedule 350C, Analysis of Federal Income Taxes, with new Schedules 351 through 353. Schedule 351 calls for the reconciliation of net income used in computing Federal income tax accruals. In addition, this Schedule requires a breakdown of the taxable income figure into ordinary income and capital gains components. Schedules 352 and 353 request a variety of tax information, including a computation of tax accruals showing total tax divided between tax on ordinary income and tax on capital gains, the distribution of tax accruals among certain accounts, and the effects of accelerated depreciation, the investment tax credit, and accelerated amortization of facilities. The Commission would put this information in Rail Form A, which is a public document.

The plaintiff Association of American Railroads is an unincorporated association whose members operate more than ninety-five percent of the total railroad mileage in the United States. The Association concedes that the Commission has the right to obtain the information requested in the expanded tax schedules, but it objects to making such data public by its inclusion in Rail Form A.[1] Plain-

1. The Interstate Commerce Act gives the Commission broad powers to obtain information:
"*Reports from carriers, lessors and associations* The Commission is authorized to require annual, periodical, or special reports from carriers, lessors, and associations (as defined in this section), to prescribe the manner and form in which such reports shall be made, and to require from such carriers, lessors, and associations specific and full, true, and correct answers to all questions upon which the Commission may deem information to be necessary, classifying such carriers, lessors, and associations as it may deem proper for any of these purposes.

tiff contends that the open disclosure of Federal income tax data contained in this Form would be contrary to the statutory protection provided by 26 U.S.C. § 6103 and 26 U.S.C. § 7213.[2]

For its part the Commission makes the following argument: *First*, the sections of the Internal Revenue Code, cited above and relied upon by the plaintiff extend the protection of confidentiality only to the original return filed with the Internal Revenue Service, and not to tax data or tax returns filed with other government agencies. 341 I.C.C. 205, 210. *Second*, since there is no privilege attached to tax data in the hands of the Commission, the Freedom of Information Act, 5 U.S.C. § 552, mandates the disclosure of this information to the public. Thus defendants conclude that:

"We have reviewed those statutes and conclude that they do not apply to a situation where, as here, a regulatory agency requires information as part of a regulated carrier's annual report and is obligated to make such a report available to the public." 341 I.C.C. 205, 210.

The crux of this case is the right of a government agency to obtain income tax information as distinguished from the right of that same agency to disclose such information to the public. As we noted above, the Commission has broad powers to require the submission of particular data under 49 U.S.C. § 20(1). This statute, however, does not require information so obtained to be made public.[3] The Commission's determination that this tax data is to be made public follows *a fortiori* from their decision to include the new Schedules as a part of Rail Form A.

The protection of the data contained in Federal tax returns is an essential part of our scheme of taxation. Individuals and corporations have the right to expect that information contained in tax returns will not be made available by the government to the public. The policy of confidentiality for income tax data encourages the full disclosure of income by taxpayers in that the individual or corporate taxpayer is assured that his neighbor or competitor will not be apprised of the intimate details of his financial life.[4]

Such annual reports shall give an account of the affairs of the carrier, lessor, or association in such form and detail as may be prescribed by the Commission." 49 U.S.C. § 20(1).

2. 26 U.S.C. § 6103 (in part)
"(a) *Public record and inspection*
(1) Returns made with respect to taxes imposed by chapters 1, 2, 3 and 6 upon which the tax has been determined by the Secretary or his delegate shall constitute public records; but, except as hereinafter provided in this section, they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary . . ."
26 U.S.C. § 7213 (in part)
"(a) *Income returns*—
(1) *Federal employees and other persons*—It shall be unlawful for any officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any

book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; and it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return, or any part thereof or source of income, profits, losses, or expenditures appearing in any income return; . . ."

3. In fact there is a prohibition against disclosure at 49 U.S.C. § 20(7)(f) (in part):
"Any special agent, accountant, or examiner who knowingly and willfully divulges any fact or information which may come to his knowledge during the course of any examination or inspection made under authority of this section, except insofar as he may be directed by the Commission or by a court or judge thereof, shall be guilty of a misdemeanor . . ."

4. "This policy [against disclosure of income tax returns] is grounded in the interest of the government in full disclosure of all the taxpayer's income which thereby maximizes revenue." Federal Savings and Loan Insurance Corp. v. Krueger, 55 F.R.D. 512, 514 (N.D.Ill.1972).

The statutory mandate for this protection is found in 26 U.S.C. § 6103 and 26 U.S.C. § 7213. Section 6103 sets forth the general proposition that access to income tax returns shall be denied except under Presidential Order or pursuant to published regulations.[5] Section 7213, while generally making unauthorized disclosure of tax information a crime, specifically extends such prohibition to "*any* officer or employee of the United States." [Emphasis added] This section not only forbids divulging the contents of the filed tax return, but also the contents of copies of such returns or any "source of income, profits, losses, or expenditures appearing in any income return . . ." It is clear that the purpose of this statutory protection would be meaningless if such protection were not extended to copies of tax returns and to the pertinent data and information in the hands of the taxpayer.

■ We turn now to the Commission's argument that the tax data submitted pursuant to the new Schedules must be made public because the Freedom of Information Act, 5 U.S.C. § 552, demands such disclosure. The purpose of this Act is to increase public access to information of legitimate concern, yet at the same time to prevent wholesale disclosure. Therefore, while the Act generally favors disclosure, it also bars disclosure in certain specifically enumerated instances. One such exception is set out at 5 U.S.C. § 552(b)(3) which provides

that the Act shall not apply if disclosure is barred by another statute.[6] As has been previously discussed Sections 6103 and 7213 present a strong statutory bar to the disclosure of income tax information. Therefore, the Freedom of Information Act cannot be used in the instant case to compel the disclosure to the public of income tax data legally obtained and in the hands of the Commission.

In further support of their position, the Commission places great reliance on the case of St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). This case does not support the Commission's view, but rather makes clear the distinction between the right to obtain information and the right to divulge that which has been obtained. In *St. Regis*, the company had been ordered by the Federal Trade Commission to submit a variety of data including its file copies of census reports. St. Regis refused to furnish these reports, claiming that they were confidential. The F.T.C., through the Department of Justice, brought suit to obtain compliance. We note that the statute relied upon by the F.T.C. in making its request for information from St. Regis is analogous to 49 U.S.C. § 20(1) of the Interstate Commerce Act.[7] Moreover, the F.T.C. was under the same prohibition against disclosure as was the I.C.C. in the instant case.[8]

The problem in *St. Regis*, however, was not one of public disclosure—a sec-

---

"The interests of persons compelled, under the revenue laws, to furnish information as to their private business affairs would often be seriously affected if the disclosures so made were not properly guarded." Boske v. Comingore, 177 U.S. 459, 469–470, 20 S.Ct. 701, 705, 44 L.Ed. 846 (1900).

5. See Internal Revenue Service Regulations § 301.6103 ff.

6. 5 U.S.C. § 552 (in part)
"(b) This section does not apply to matters that are—

   *     *     *     *     *

(3) specifically exempted from disclosure by statute; . . ."

7. 15 U.S.C. § 46(b) (in part)
"The commission shall also have power—

(b) To require, by general or special orders, corporations engaged in commerce, excepting banks, and common carriers subject to the Act to regulate commerce, . . . to file with the Commission in such form as the Commission may prescribe annual or special, or both annual and special, reports or answers in writing to specific questions, furnishing to the commission such information as it may require . . ."

8. 15 U.S.C. § 50 (in part)
"Any officer or employee of the Commission who shall make public any information obtained by the Commission without its authority, unless directed by a court, shall be deemed guilty of a misdemeanor . . ."

ondary step, but rather one of disclosure to the F.T.C.—a primary step. The Supreme Court held that the census reports should be furnished to the F.T.C. but did not reach or consider the question of whether the F.T.C. could make such submissions available to the public. The Court noted that "the prohibitions against disclosure contained in § 9 [of the Census Act] run only against the officials receiving such information and do not purport to generally clothe [such] census information with secrecy." 368 U.S. 208, 217–218, 82 S.Ct. 289, 295. This was emphasized when the Court stated that "Congress did not prohibit the use of the [census] reports *per se* but merely restricted their use while in the hands of those persons receiving them, i. e., the government officials." 368 U.S. 208, 218, 82 S.Ct. 289, 295.

Thus, in *St. Regis*, the Court found that protection against public disclosure was assured when the information was placed in the hands of government officials. The Federal income tax information in the instant case requires the same protection, and such protection is provided by 26 U.S.C. § 6103 and 26 U.S.C. § 7213.

 Finally, in this case we must determine whether the plaintiffs have in any way placed their income at issue and thereby waived their right to confidentiality. We find that they have not. The Commission asserts that Rail Form A is used to determine rate increases and therefore the railroads do put their income at issue. However, this Court finds that Rail Form A is only used in ordinary rate cases where the question is one of whether the rate charged is just and reasonable in light of the services provided. In such a proceeding total income is not at issue. However, in a proceeding for a general increase, revenue needs are a factor. Although we do not decide the question, it is possible that in such a situation the Commission might find that a carrier had put its income at issue and thus had waived the right to confidentiality.

Therefore, it is

Ordered, That information submitted to the Interstate Commerce Commission, pursuant to Schedules 351, 352 and 353 shall remain confidential and it is

Further Ordered, That counsel will each submit an Order in conformity with this Opinion; or, if they are able to agree, they shall submit an agreed form of Order within 10 days.

So Ordered.