UNITED STATES of America,
Appellant,

v.

Peter P. LIEBERT, III.

No. 74–2294.

United States Court of Appeals,
Third Circuit.

Argued April 18, 1975.
Decided June 30, 1975.
Certiorari Denied Nov. 17, 1975.
See 96 S.Ct. 392.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Robert E. Lindsay, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Marvin Comisky, Jerome R. Richter, Martin H. Belsky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, *Circuit Judge:*

Despite more than a decade of experience with expanded pretrial discovery in criminal cases, the extent to which it should be permitted continues to be "a complex and controversial issue."[1] Whether pretrial discovery may be used to secure extrinsic evidence to impeach the reliability of computer printouts which are the fundament of the prosecution's case presents an issue of first impression.

Defendant, Peter P. Liebert, III, was charged in a three-count information on December 21, 1973, with willfully and knowingly having failed to file his income tax returns for the years 1967 through 1969, in violation of section 7203 of the Internal Revenue Code of 1954 (Code). Liebert was arraigned and pleaded not guilty to the charges. His attorneys have claimed he filed a tax return for each of the three years in question.

## I. DISCOVERY MOTIONS

In a failure-to-file prosecution, the Government relies heavily upon a report compiled by the personnel of the appropriate service center that their computers have no record of the receipt of a taxpayer's return for the particular year. In preparation for challenging the reliability and accuracy of the computer report, Liebert filed on January 14, 1974, a motion seeking an order permitting his computer expert access to the Mid-Atlantic Service Center for the purpose of analyzing and testing the Internal Revenue Service's (IRS) data processing systems. After extended proceedings, the district court granted the motion.

On February 28, 1974, Liebert filed a second discovery motion seeking production of all records indicating the number of notices issued by the IRS for the years 1967 through 1973 to taxpayers advising that no tax return had been received.[2] On October 22, 1974, again after extended proceedings, the district court ordered the Government to furnish Liebert a "mutually agreeable portion of the lists" of the people whom the Government suspected as being probable nonfilers for the years 1970 and 1971.[3] 383 F.Supp. 1060 (E.D.Pa.1974).

When the Government refused to produce the lists, the district court on November 26, 1974, dismissed the charges against Liebert. The Government appeals, arguing that the lists are not subject to disclosure under the Code. The Government also contends that even if the lists are not privileged under the Code, the information Liebert desires through the use of the lists may be obtained from alternative sources without invading the privacy of the persons listed.[4] We find merit in the Govern-

1. *See Advisory Committee's Note to Proposed Amendments to Rules of Criminal Procedure,* 34 F.R.D. 411, 423 (1964).

2. Liebert learned of the existence of such records when an Assistant United States Attorney introduced one page of the list into evidence in another failure-to-file case. *See United States v. Greenlee,* No. 74–2106, 517 F.2d 899 (3d Cir., 1975).

3. The lists were not available for 1967 through 1969, the years for which Liebert had been charged with failure to file tax returns. The district court ordered the production of the 1970 and 1971 lists after determining that the system producing these lists had been upgraded since the preparation of the 1967 through 1969 lists. The court reasoned that if errors existed in the later lists, they in all probability would demonstrate the presence of an equal or greater number of errors in the earlier lists. The Government has not challenged this conclusion on appeal.

4. Previous to the district court's action, another judge in the district had refused to order the production of the lists. *United States v. Spear,* 377 F.Supp. 1162 (E.D.Pa.1974).

ment's latter contention, vacate the judgment of the district court, and remand.

An understanding of the nature of the lists in dispute is essential for the proper resolution of the problem confronting us.[5] The lists are prepared in conjunction with the IRS Individual Master File Delinquency Check Program, which identifies individuals who filed in the previous year but apparently have not filed for the current year, and individuals who have not filed for either the current or the previous years.

About six months after the due date of the return in question, an inquiry is initiated by analyzing the individual master file for taxpayers who have filed in the prior year but apparently not for the current year. Also, certain other documents, such as Social Security Administration wage records and W–2 forms, are compared with the master file to identify possible nonfilers. After the potentially delinquent taxpayers have been identified, wage information for the current year, adjusted gross income from the last return filed, and other criteria are used to determine whether the taxpayer probably was required to file.

Within the limitations of available resources, certain of these apparent nonfilers are selected for contact.[6] As soon as the first notices are sent to the apparently delinquent taxpayers, the service center prepares a listing identifying each nonfiling taxpayer. These listings are the lists in issue in this case. If the taxpayer does not respond satisfactorily to the notice, a taxpayer delinquency investigation is issued and forwarded to the local IRS office where an attempt is made to communicate with the taxpayer either by phone, letter, or in person to resolve the apparent delinquency.

Thus, although the lists are commonly referred to as the lists of nonfilers, that appellation is misleading in two aspects. First, the lists contain names of persons who, in fact, have filed. For example, the return may have been in process at the time the lists were prepared, the taxpayer may have moved and filed in a different service center, or the taxpayer may have married and filed jointly under a different name. Second, the lists contain names of persons who did not file, but were under no duty to do so. Such people may have not earned enough adjusted gross income to be required to file, or indeed may have died during the year.

## II. GOVERNMENT'S STATUTORY CONTENTIONS

The Government contends that the production of the lists is barred by section 6103(a) of the Code, which permits the public inspection of returns "only upon order of the President and under rules and regulations prescribed by the Secretary . . .."[7]

Although recognizing that the nonfiling lists are not tax returns, as are 1040 forms, the Government argues that the lists are compiled from previous years' returns, and from documents normally attached to the current year's returns, such as W–2 forms, and therefore are encompassed within the administrative

---

5. Our description is taken from a brief filed by the Government in the district court. Liebert has not disputed the Government's characterization of the lists.

6. In 1970, out of 6,000,000 potential nonfilers, 465,000 were selected for contact.

7. Int. Rev. Code § 6103(a) provides:
 (a) Public record and inspection.—
 (1) Returns made with respect to taxes imposed by chapters 1, 2, 3, and 6 upon which the tax has been determined by the Secretary or his delegate shall constitute public records; but, except as hereinafter provided in this section, they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary or his delegate and approved by the President.

definition of "return" promulgated under authority of subsection (a).[8]

Congress, in enacting section 6103(a), sought to protect the confidentiality of the information necessary for the determination of tax liability found in returns filed under compulsion of law. *Tax Analysts and Advocates v. IRS,* 505 F.2d 350, 354, n.1 (D.C.Cir.1974); *Association of Am. Railroads v. United States,* 371 F.Supp. 114, 116 (D.D.C.1974)(three-judge court). This policy of confidentiality encourages the full disclosure of income by taxpayers who are assurd that their neighbors or competitors "will not be apprised of the intimate details of [their] financial [lives]." *Association of Am. Railroads v. United States, supra,* 371 F.Supp. at 116.

Section 6103(a), however, is limited by section 6103(f) of the Code which mandates that the IRS furnish to an inquirer information as to whether a person has, or has not, filed an income tax return.[9]

Information about an individual's financial status necessarily revealed by disclosing whether or not an individual has filed his return cannot be confidential under subsection (a) because the fact of filing or nonfiling is public information under subsection (f). For example, the amount of an individual's adjusted gross income is confidential under subsection (a), but the information that an individual either has an adjusted gross income requiring a filing or lacks such income but desires a tax refund cannot be confidential because such information necessarily is revealed by the filing of a return.

The nonfiling list reveals two types of information about an individual taxpayer. First, the list reveals that as a result of an investigation, albeit preliminary and incomplete, the IRS has determined that the individual did not file a return notwithstanding his duty to file. This type of information is not covered by subsection (a). Second, the list contains

---

**8.** Returns are defined by Treas. Reg. § 301.-6103(a)–1(a)(3)(i) (1972) which provides:

 (3) *Terms used*—(i) *Return.* For purposes of section 6103(a), the term "return" includes—

 (a) Information returns, schedules, lists, and other written statements filed by or on behalf of the taxpayer with the Internal Revenue Service which are designed to be supplemental to or become a part of the return, and

 (b) Other records, reports, information received orally or in writing, factual data, documents, papers, abstracts, memoranda, or evidence taken, or any portion thereof, relating to the items included under (a) of this subdivision.

**9.** Int. Rev. Code § 6103(f) provides:

 (f) Disclosure of information as to persons filing income tax returns.—The Secretary or his delegate shall, upon inquiry as to whether any person has filed an income tax return in a designated internal revenue district for a particular taxable year, furnish to the inquirer, in such manner as the Secretary or his delegate may determine, information showing that such person has, or has not, filed an income tax return in such district for such taxable year.

 Prior to 1966, subsection (f) required that lists containing the name and address of each person filing a return in a particular internal revenue district should be maintained in each

district. The Government argues that the 1966 legislation amending subsection (f) to its present form relegated the disclosure of whether a taxpayer had filed to provisions of *subsection (a).*

The 1966 amendment was included in a bill amending the Code to allow for the modernization of the IRS automatic data processing system. Act of Nov. 2, 1966, Pub. L. No. 89–713, 80 Stat. 1107. As a result of this modernization, the IRS proposed to maintain the lists of filers on microfilm, and Congress believed that making the microfilm and the necessary reading equipment available to the general public would not be practical. S. Rep. No. 1625, 89th Cong., 2d Sess. 8 (1966). Congress also noted that under the proposed automatic data processing system, the list of those individuals filing tax returns would contain the individuals' social security numbers. Congress determined that social security numbers should not be available to the general public because these numbers could not be used to obtain information about an individual's wages. *Id.* Subsection (f) was amended to its present form to eliminate these problems.

The legislative history does not reveal any effort to restrict the public nature of information showing that an individual has filed his return. Indeed, the Senate Report accompanying the amendment specifically provided that "whether or not a person has filed his tax return should continue to be a matter of public knowledge." *Id.*

limited information about an individual's financial status. Such information reveals at most that an individual either had filed in the previous year or had an adjusted gross income requiring a filing in the current year. This information is exactly the type of information necessarily revealed by the fact of filing, which is public knowledge under subsection (f).

We therefore conclude that neither section 6103(a) nor any reasonable construction thereof bars the production of the nonfiling lists pursuant to judicial order. Since the production of the lists is not barred by the statute, production may not be barred by the regulations promulgated under authority of the statute.[10] See Tax Analysts & Advocates v. IRS, supra, 505 F.2d at 354 n. 1.

The Government also contends that disclosure of the lists is forbidden by section 7213(a)(1) of the Code which provides that it shall be unlawful for any federal employee "to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law,"[11] and 18 U.S.C. § 1905 (1970) which is a more general anti-disclosure statute containing a similar prohibition.[12] Under both statutes, the prohibition against the release of confidential information contains the proviso "except as provided by law." Such phrase permits the disclosure of confidential information pursuant to a lawfully issued judicial order. In Blair v. Osterlein Machine Co., 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249 (1927), the court was confronted with similar language in a predecessor of section 7213(a). The Board of Tax Appeals had issued a subpoena to the Commissioner requesting certain information contained in the tax returns of twelve corporations. The Commissioner maintained that disclosure was forbidden by the statute but the Court disagreed:

The prohibition is limited to disclosures made "in any other manner than may be provided by law." It cannot be deemed to forbid disclosures made in obedience to process lawfully issued in a judicial or quasi-judicial proceeding . . . .

275 U.S. at 227, 48 S.Ct. at 89.

### III. RULE 16(b)

Absent any statutory prohibition against the production of nonfiling lists, the authority of the district court to order the production of such lists is gov-

---

10. Since we reach this conclusion, we need not determine whether subsection (b) of the Treasury Regulation barring the production of any documents relating to an individual's return is a proper interpretation of the statute. See B & C Tire Co. v. IRS, 376 F.Supp. 708, 712 (N.D.Ala.1974).

We also do not reach the question of whether the regulations promulgated under section 6103 do bar in fact the production of the nonfiling lists pursuant to judicial order. See Treas. Reg. § 301.6103(a)–1(g) (mandating that returns shall be open for inspection by a United States attorney where necessary in the performance of his official duties); Treas. Reg. § 301.6103(a)–1(h) (returns may be furnished to a United States attorney for use in, or in preparation for, litigation in any court in which the United States has an interest in the result). But see Treas. Reg. § 301.6103(a)–1(a)(3)(i) (items listed in subdivision (b) of regulation open to inspection only in discretion of Secretary or Commissioner).

11. Int. Rev. Code § 7213(a)(1) provides in pertinent part:

(a) Income returns—
(1) Federal employees and other persons. —It shall be unlawful for any officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law . . . .

12. 18 U.S.C. § 1905 (1970) provides in pertinent part:

Whoever, being an officer or employee of the United States or of any department of agency thereof . . . permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined . . . or imprisoned . . . .

erned by Federal Rule of Criminal Procedure 16(b) which provides that "the court may order ·the attorney for the government to permit the defendant to inspect and copy . . . documents . . . within the possession . . . of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable."[13] The use of the permissive term "may" calls for an exercise of discretion and indicates the absence of a hard and fast rule when discovery should be ordered. *United States v. McCarthy,* 292 F.Supp. 937, 941–42 (S.D.N.Y.1968). Thus, a district court's ruling on a discovery motion will be disturbed only for an abuse of discretion. *United States v. Fioravanti,* 412 F.2d 407, 410 (3d Cir.), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969).

The nonfiling lists undoubtedly are material to the preparation of Liebert's defense. A defendant in a criminal trial enjoys the sixth amendment right of being confronted with the witnesses testifying against him and of having compulsory process for obtaining witnesses to testify in his favor. As the Supreme Court only recently noted in rejecting a presidential claim of privilege:

> The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be

available for the production of evidence needed either by the prosecution or by the defense.

*United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

■ Included within the constitutional right of confrontation is the ability through cross-examination to challenge the credibility and reliability of the witnesses testifying against a defendant. *See Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1964); *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1964). A major "witness" confronting Liebert will be computer printouts indicating that the IRS has no record of having received his returns. *See United States v. Greenlee,* 380 F.Supp. 652 (E.D.Pa.1974), *aff'd,* 517 F.2d 899 (3d Cir., 1975). The introduction of a computer printout is admissible in a criminal trial provided that the party offering the computer information lays a foundation sufficient to warrant a finding that such information is trustworthy and the opposing party is given the same opportunity to inquire into the accuracy of the computer and its input procedures as he has to inquire into the accuracy of written business records. *United States v. De Georgia,* 420 F.2d 889 (9th Cir. 1969).

■ A party seeking to impeach the reliability of computer evidence should have sufficient opportunity to ascertain by pretrial discovery whether both the machine and those who supply it with data input and information have performed their tasks accurately. *See* Manual for Complex Litigation in 1 *J. Moore,*

---

**13.** Federal Rule of Criminal Procedure 16(b) provides:

> (b) Other Books, Papers, Documents, Tangible Objects or Places. Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his de-

fense and that the request is reasonable. Except as provided in subdivision (a)(2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500.

*Federal Practice,* pt. 2, § 2.715 (2d ed. 1974); *United States v. Russo,* 480 F.2d 1228, 1241 (6th Cir. 1973); *United States v. Dioguardi,* 428 F.2d 1033 (2d Cir.), *cert. denied,* 400 U.S. 825, 91 S.Ct. 50, 27 L.Ed.2d 54 (1970). The nonfiling lists plainly are outputs of the computer system identifying individuals not filing returns. If an individual who in fact has filed is listed as a nonfiler due to computer error, such error casts doubt on the accuracy and reliability of the records identifying Liebert as a nonfiler. The lists, therefore, may be useful to Liebert in his efforts to impeach the reliability of the computer procedures indicating that he has not filed his returns.

 Rule 16(b), however, does not allow discovery merely upon a showing that the requested documents are material to the defendant's preparation for trial; the reasonableness of the discovery request must also be demonstrated. The determination by the district court of the reasonableness of a request requires balancing the interests favoring and opposing discovery. Whether the scales are tipped for or against discovery depends upon where lies the most compelling need. *United States v. Aluminum Co. of America,* 232 F.Supp. 664 (E.D.Pa.1964).

The interest favoring the discovery request in the instant case is, as just discussed, the usefulness of the nonfiling lists to the preparation of Liebert's defense. Opposing the request are weighty interests—the right of privacy of the individuals named on the lists, and the need to avoid the problems in managing the presentation of evidence developed from the lists.

As aptly described by Mr. Justice Brandeis almost a half century ago, and equally true today, "the right to be let alone [is] the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). The district court characterized this right as "elusive," primarily because it believed the information in the lists could be obtained under section 6103(f) by addressing to the IRS numerous inquiries as to whether particular individuals had filed their returns. 383 F.Supp. at 1064. This characterization, however, disregards the existence of three different facets of individual privacy which may be violated by production of the nonfiling lists, only one of which is infringed to the same degree by subsection (f).

First, the failure of an individual to file a return is revealed by production of the lists. Although an individual may desire to keep such information confidential, the fact of nonfiling is public information under subsection (f).

Second, the production of such lists necessarily would lead to communications from Liebert. His specific purpose in seeking the list is to communicate with individuals named in the lists in a zealous effort to find inaccuracies. This he proposes to do in the face of "[t]he ancient concept that 'a man's home is his castle' into which 'not even the king may enter' has lost none of its vitality . . . .." *Rowan v. United States Post Office Dep't,* 397 U.S. 728, 737, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970). While courts in some instances have ordered production of lists which might lead to contacts between the parties obtaining, and those named, in the lists, such production has been limited to instances where it advanced an important public interest and where the person contacted probably would not be offended.[14] Where the contact is likely to prove offensive, the courts vigilantly have safeguarded the privacy of the individual.[15]

---

14. *See, e. g., Robles v. EPA,* 484 F.2d 843 (4th Cir. 1973) (names and addresses of persons exposed to radiation emissions, persons seeking information not identified); *Getman v. NLRB,* 146 U.S.App.D.C. 209, 450 F.2d 670 (1971) (names and addresses of persons eligible to vote in representative elections sought by law professors engaged in academic studies).

15. *See, e. g., Rowan v. United States Post Office Dep't,* 397 U.S. 728, 90 S.Ct. 1484, 25

An intrusive communication by a stranger about a failure to file a tax return well may prove disturbing to an individual. Moreover, such contact could prove disturbing apart from tax considerations by reviving dormant unpleasant memories.[16] *See Rose v. Department of Air Force,* 495 F.2d 261 (2d Cir. 1974), *cert. granted,* 420 U.S. 923, 95 S.Ct. 1115, 43 L.Ed.2d 392 (1975).

Of course, inquiries may be made of individuals about their nonfiling as a result of subsection (f), but the probability of such inquiry is significantly less than through the production of the nonfiling lists. Only 450,000 of the estimated 6,000,000 probable nonfilers are contained in the nonfiling lists, thereby increasing the exposure to contact of the individuals named by a factor of twelve. Moreover, as Liebert recognizes, the identification of all nonfilers under subsection (f) is impractical, requiring culling of names from a phone book or street directory, transmitting the list to the appropriate internal revenue office, and tabulating the answers.[17] As contrasted with this impractical procedure, the easy availability of the names in the nonfiling lists increases the likelihood of contact with such persons.

Third, and most important, the individuals on the nonfiling lists are not just individuals who the IRS believes have not filed, but are individuals who the IRS believes have not filed in violation of their legal obligation. Nothing in subsection (f) authorizes the release of information indicating that the IRS preliminarily suspects an individual of being in violation of the law. Although the great majority of persons on the lists in fact have filed a return or have legitimate reasons for not doing so, being a suspect under investigation by a government agency is a circumstance which every person except the bizarre would prefer to hold in confidence. The courts have respected this preference. *See, e. g., Rose v. Department of Air Force,* 495 F.2d 261 (2d Cir. 1974), *cert. granted,* 420 U.S. 923, 95 S.Ct. 1115, 43 L.Ed.2d 392 (1975).

The other interest opposing discovery is the difficulty in managing at trial the information developed from the lists. Liebert hopes to be able to find persons listed as nonfilers but who in fact have filed, and introduce such evidence to the jury either by calling such persons as witnesses or by cross-examination of the IRS computer experts. The Government then may assume the burden of rebutting the accuracy of such evidence by attempting to prove that the persons cited by Liebert did not in fact file their returns or were listed as nonfilers for reasons other than computer error. The trial thus is likely to deteriorate into a series of minitrials centered upon the reasons individuals, not defendants in the case, were listed as nonfilers. The chief issue, Liebert's alleged willful failure to file his returns, may be obscured.

Balancing the need for disclosing all relevant information in a criminal proceeding against the need for protecting the privacy of individuals having no connection with it, and the further need for avoiding the potential misuse of such information is a difficult and delicate task. It may well be, as Liebert contends, that absent alternative sources of information and difficulty in managing such informa-

L.Ed.2d 736 (1970) (right of individuals who object to mailings as "sexually provocative" to have names removed from mailing list); *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951) (protection of individual from uninvited visit of door-to-door solicitor of magazines); *Wine Hobby USA, Inc. v. United States Internal Revenue Service,* 502 F.2d 133 (3d Cir. 1974) (refusal to order production of lists which would lead to commercial solicitations). *But see Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313

(1943) (ordinance forbidding door-to-door solicitation unconstitutional as applied to religious solicitors).

16. For example, Liebert might contact a relative of a person whose name appeared on the list as a probable nonfiler because of the death of that individual.

17. It is uncertain whether Liebert would have to mail each name in a separate envelope or could transmit the entire list at once.

tion at trial, "[t]he generalized assertion of privilege [based on confidentiality] must yield to the demonstrated, specific need for evidence in a pending criminal trial." *United States v. Nixon,* 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974). *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (juvenile records of witness must be made available to defendant for purposes of cross-examination); *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (witness must reveal his name so as to allow cross-examination); *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (grand jury testimony of witnesses must be disclosed to defendant). We note that the foregoing cases required disclosure from witnesses, not extrinsic evidence from unrelated parties. Moreover, such cases do not control here because they involve discovery from the only available source of information. Further the information sought was either admissible in the case in chief or in a form manageable during cross-examination.

■ Even when the evidence sought in pretrial discovery is material for the defense of a criminal prosecution, we believe the mantle of the privacy of a person having no connection with the case should not be lifted, at least in the present context, if there are reasonable alternative means of securing the information.[18] The principle has particular application when the intrusion on privacy runs a risk of being extraordinarily burdensome to the parties and also may tend to obscure the real issue in the case.

The Government, both voluntarily and as a result of the district court's order directing that Liebert's experts have access to the Mid-Atlantic Service Center for the purpose of testing and analyzing the computer facilities, represented to the district court that it would make available to Liebert: (a) all the relevant IRS handbooks documenting the procedures, machine operations, and other relevant information pertaining to its electronic data processing system; (b) statistical analyses relating to the Service's ability to discover and report accurately failures to file returns; (c) an expert familiar with all aspects of the nonfiling lists; (d) an expert familiar with all aspects of the processing of work through the Mid-Atlantic Service Center; and (e) an expert who has made studies on the reliability of the Service's data processing systems.[19] The experts may be deposed by Liebert on any subject not concerning confidential data obtained from tax returns filed by taxpayers. Moreover, the Government has offered to allow Liebert's computer experts to run any test on its computer system not unreasonably interrupting the Service Center operations. Finally, the Government has offered to conduct tests demonstrating the retrieval of a number of actual tax returns of taxpayers whose authorizations are obtained.

Such alternatives should provide Liebert with the information necessary to cross-examine the computer testimony confronting him by analyzing the reliability of the computer system in theory and checking the accuracy of the system in fact. Moreover, the alternatives should provide information focusing directly on the credibility of the computer testimony and more likely should develop the facts than the digression sought by Liebert. They should provide evidence adducible at trial in a more manageable

---

**18.** *See* ABA Standards Relating To Discovery and Procedure Before Trial § 2.5(b) (Approved Draft 1970) which provides:

> (b) The court may deny disclosure authorized by this section if it finds that there is a substantial risk to any person of . . . unnecessary annoyance or embarrassment, resulting from such disclosure, which outweighs any usefulness of t e disclosure to defense counsel.

Judge Weis believes that considerations of unnecessary annoyance or embarrassment set forth in these ABA standards are more applicable to the issue raised in this case than considerations of privacy.

**19.** We assume that the information supplied by the Government will include the number of persons listed as nonfilers due to computer error in 1970 and 1971.

manner without the risk of invading the privacy of, or inconveniencing, taxpayers wholly unconnected with the case. The order of the district court directing the production of the nonfiling lists was unreasonable in light of the alternatives offered by the Government.

The judgment of the district court will be vacated and the case remanded with directions to reinstate the information. Upon proper motion by the defendant, the district court should order the Government to produce the materials and experts indicated in this opinion. Each party will bear its own costs.