# Disclosure of Information Collected Under the Export Administration Act

Information collected under the Export Administration Act which is authorized to be made available to other federal agencies under the Paperwork Reduction Act of 1980 may be released by the Department of Commerce to federal law enforcement and intelligence agencies without a prior determination that it would serve the national interest to do so.

Section 12(c) of the Export Administration Act was not intended to prohibit disclosure to other federal agencies, but merely prohibits disclosure of certain confidential trade information to the public.

Confidential information obtained pursuant to the Export Administration Act which is not covered by the Paperwork Reduction Act, and is exempt from disclosure under the Freedom of Information Act, may be released to federal law enforcement and intelligence agencies notwithstanding the prohibition in 18 U.S.C. § 1905, if the Secretary of Commerce determines under § 12(c) of the Export Administration Act that failure to make such disclosure would be contrary to the national interest.

In the exercise of his discretion under § 12(c), the Secretary of Commerce is subject to the review and direction of the President, and the President thus has the power, which he has previously exercised, to direct the Secretary to make a determination and authorize release of information.

August 24, 1981

## MEMORANDUM OPINION FOR THE COUNSEL FOR INTELLIGENCE POLICY, DEPARTMENT OF JUSTICE

This responds to your request for our opinion whether the Export Administration Act precludes the Secretary of Commerce from making a general determination that the national interest would be served by the routine disclosure of information collected under the Act to law enforcement and intelligence agencies. You also asked whether the Export Administration Act would authorize an amendment to the regulations promulgated under the Act to define "export" to include the release of goods or technical data where the transferer "knows or has reason to know" that they will be shipped or transmitted from the United States to a foreign country. We addressed and resolved this question by our memorandum to the Department of Commerce of July 28, 1981, and a more extensive memorandum to the Department of State of July 1, 1981, copies of which we have enclosed for you. With respect to the first question, we have concluded that all information collected by the Department of Commerce under the Export Adminis-

255

tration Act of 1979, Pub. L. No. 96–72, 93 Stat. 503, 50 U.S.C. App. §§ 2401–2420 (Supp. III 1979), which falls under the definition of "collection of information" set forth in the Paperwork Reduction Act of 1980, Pub. L. No. 96–511, § 2(a) 94 Stat. 2812, 44 U.S.C. §§ 3501–3520 (Supp. IV 1980), may be released to other federal agencies, including law enforcement and intelligence agencies. With respect to other confidential information obtained pursuant to the Export Administration Act which is not covered by the Paperwork Reduction Act, we perceive no legal reason why the Secretary of Commerce cannot make a generalized determination that disclosure to federal law enforcement and intelligence agencies is in the national interest and waive the confidential treatment of the information to the extent of such a transfer.

## I. Paperwork Reduction Act

Our analysis focuses initially on the Paperwork Reduction Act rather than on the question specifically raised by your request—whether information obtained under the Export Administration Act could be disclosed to federal law enforcement agencies upon a general determination by the Secretary of Commerce that such disclosure is in the national interest—because we believe that, with the enactment of the Paperwork Reduction Act after the submission of your opinion request, most of the information is authorized to be disclosed to other federal agencies without a national interest determination by the Secretary. With respect to information that may be shared under the Paperwork Reduction Act, the question of the need for a national interest determination arises only when a federal agency seeks to disclose confidential information obtained under the Export Administration Act to the public.

The Paperwork Reduction Act of 1980, which replaced the Federal Reports Act, Pub. L. No. 90–620, 82 Stat. 1302, provides:

> The Director [of Office of Management and Budget] may direct an agency to make available to another agency, or an agency may make available to another agency, information obtained pursuant to an information collection request if the disclosure is not inconsistent with any applicable law.

94 Stat. at 2822, 44 U.S.C. § 3510 (Supp. IV 1980). Thus, the Department of Commerce is authorized by the Paperwork Reduction Act to share information with other federal agencies, including law enforcement and intelligence agencies, when the following conditions are present:

> 1) The information is obtained pursuant to an information collection request; and

256

2) The disclosure of information is not inconsistent with any applicable law.

## A. *"Information Collection Request"*

Under the Paperwork Reduction Act, an "information collection request" is defined as a "written report form, application form, schedule, questionnaire, reporting or recordkeeping requirement or other similar method calling for the collection of information." 94 Stat. at 2814, 44 U.S.C. § 3502(ii). "Collection of information" is defined to include "the obtaining or soliciting of facts or opinions by any agency through the use of "any of the above-mentioned methods which calls for "answers to identical questions posed to, or identical reporting or record-keeping requirements imposed on, ten or more persons, other than agencies, instrumentalities, or employees of the United States. . . ." 94 Stat. at 2813, 44 U.S.C. § 3502(4).

Thus, information on identical license application forms or other reporting forms collected pursuant to the Export Administration Act, as well as information obtained by the Commerce Department in reviewing records maintained by exporters pursuant to identical record-keeping requirements issued under the Act, fall within the definition of information obtained pursuant to an information collection request which may be shared with other federal agencies if such disclosure is not inconsistent with any applicable law.

## B. *"Not Inconsistent with any Applicable Law"*

The legislative history of the Paperwork Reduction Act makes clear that in order for the disclosure of information to be "inconsistent with any applicable law,"

> the applicable law must prohibit the sharing of data between agencies or must totally prohibit the disclosure to anyone outside the agency. A mere prohibition on disclosure to the public would not be inconsistent with sharing the data with another agency unless the sharing would inexorably lead to a violation of that prohibition.

H.R. Rep. No. 835, 96th Cong., 2d Sess. 30 (1980). *See also* S. Rep. No. 930, 96th Cong., 2d Sess. 50 (1980).[1] Because the Export Administration Act contains a non-disclosure provision, it is necessary to determine whether that non-disclosure provision prohibits disclosure to other federal agencies or whether it is a "mere prohibition on disclosure to the public."

---

[1] The Senate bill as reported by the Senate Committee on Governmental Affairs also excepted from the authorization for interagency sharing of information disclosures which are inconsistent with applicable agency policy. That exception was deleted by an amendment on the Senate floor. 126 Cong. Rec. S 14690 (daily ed. Nov. 19, 1980).

257

## II. Section 12(c) of the Export Administration Act

The non-disclosure provision, § 12(c) of the Export Administration Act, 93 Stat. at 531, as codified at 50 U.S.C. App. § 2411(c),[2] separates the information obtained under the Act into two categories—information collected before and information collected after June 30, 1980. Section 12(c) provides that all information obtained under the Export Administration Act after June 30, 1980, except licensing information, may be withheld from public release only to the extent permitted by other law. Licensing information is to be withheld from public disclosure unless the Secretary of Commerce determines that the release of such information would be in the national interest. We think it is clear from the face of § 12(c) that all the information obtained under the Export Administration Act after June 30, 1980, including licensing information, may be shared with other federal agencies, assuming no other statutory bar, if it is information obtained under an "information collection request" as defined by the Paperwork Reduction Act. We draw this conclusion because the prohibition in § 12(c) against disclosure of such information, to the extent it prohibits disclosure, is directed solely at public disclosure.

With respect to information obtained prior to June 30, 1980, we also believe that the Paperwork Reduction Act authorizes disclosure of information obtained under an "information request" to other federal

---

[2] (c) Confidentiality

(1) Except as otherwise provided by the third sentence of section 8(b)(2) [section 2407(b)(2) of this Appendix] and by section 11(c)(2)(C) of this Act [section 2410(c)(2)(C) of this Appendix], information obtained under this Act [sections 2401 to 2420 of this Appendix] on or before June 30, 1980, which is deemed confidential, including Shippers' Export Declarations, or with reference to which a request for confidential treatment is made by the person furnishing such information, shall be exempt from disclosure under section 552 of title 5, United States Code, and such information shall not be published or disclosed unless the Secretary determines that the withholding thereof is contrary to the national interest. Information obtained under this Act [sections 2401 to 2420 of this Appendix] after June 30, 1980, may be withheld only to the extent permitted by statute, except that information obtained for the purpose of consideration of, or concerning, license applications under this Act [sections 2401 to 2420 of this Appendix] shall be withheld from public disclosure unless the release of such information is determined by the Secretary to be in the national interest. Enactment of this subsection shall not affect any judicial proceeding commenced under section 552 of title 5, United States Code, to obtain access to boycott reports submitted prior to October 31, 1976, which was pending on May 15, 1979; but such proceeding shall be continued as if this Act [sections 2401 to 2420 of this Appendix] had not been enacted.

(2) Nothing in this Act [sections 2401 to 2420 of this Appendix] shall be construed as authorizing the withholding of information from the Congress, and all information obtained at any time under this Act [sections 2401 to 2420 of this Appendix] or previous Acts regarding the control of exports, including any report or license application required under this Act [sections 2401 to 2420 of this Appendix], shall be made available upon request to any committee or subcommittee of Congress of appropriate jurisdiction. No such committee or subcommittee shall disclose any information obtained under this Act [sections 2401 to 2420 of this Appendix] or previous Acts regarding the control of exports which is submitted on a confidential basis unless the full committee determines that the withholding thereof is contrary to the national interest.

50 U.S.C. App. § 2411(c).

agencies because the prohibition in § 12(c) was intended to be a "mere prohibition against public disclosure." There is some ambiguity in § 12(c)'s treatment of information acquired before June 30, 1980, because, in addition to expressly exempting such information from disclosure under the Freedom of Information Act (FOIA), it goes on to provide that "such information shall not be published or disclosed unless the Secretary determines that the withholding thereof is contrary to the national interest." Although this restriction could be read as a blanket prohibition against disclosure of information obtained prior to June 30, 1980, to anyone outside of the Department of Commerce, our analysis of its legislative history reveals that this restriction was intended only to prevent any disclosure of such information to the public whether under the Freedom of Information Act or by a discretionary release.

From the legislative history of § 12(c), it is apparent that the impetus for amending the non-disclosure provision came from a court of appeals decision that information obtained under the Export Administration Act was not specifically exempted from disclosure for the purpose of the Exemption 3 of the Freedom of Information Act, 5 U.S.C. § 552(b)(3), and that such information must be publicly disclosed unless it qualified under another FOIA exemption. *See American Jewish Congress* v. *Kreps*, 574 F.2d 624. (D.C. Cir. 1978). The Senate Banking, Housing, and Urban Affairs Committee responded to this decision by exempting all information obtained under the Act from disclosure, stating

> [t]he Committee does not believe it is in the public interest to require the disclosure to foreign and domestic competitors of U.S. firms such information as the precise value, nature, parties to the transaction and shipping date of exports by such firms, where the sole reason such information is provided to the United States government is that the information is required by statute in order to receive an export license.

S. Rep. No. 169, 96th Cong., 1st Sess. 17 (1979).

The House bill, reported by the House Commitee on Foreign Affairs, differed from the Senate bill in that it accorded only certain types of information obtained under the Act protection from disclosure under the Freedom of Information Act. Like the Senate report, the House report expressed concern solely with *public* disclosure of the information obtained under the Act. H.R. Rep. No. 200, 96th Cong., 1st Sess. 11, 28 (1979).

After extensive debate on the House floor, that body adopted an amendment to § 12(c) which gave different treatment to the information obtained before June 30, 1980, from that obtained after June 30, 1980. Throughout the debate, it is clear that the purpose of giving confidential treatment to certain information obtained under the Act, whether

by the approach adopted by the House committee bill or by the amendment with the June 30, 1980, cutoff date, was to protect American businesses from disclosure of sensitive financial and marketing information to their competitors:

> Mr. Fascell: Mr. Chairman, one of the problems and the reason for the date (June 30, 1980) is that the information asks names of customers and prices of goods which is and should be trade secrets. That is the problem and that is the reason for the cutoff.

125 Cong. Rec. 25,636 (1979).

> Mr. Alexander: Mr. Chairman, it is important that exporters be allowed confidentiality on their SED's (Shipper Export Declarations). The data disclosed on SED's includes confidential business information in which disclosure to competitors would be harmful. Foreign competitors would be especially benefited because they would not have similar vulnerabilities.

*Id.* at 25,637.

> Mr. Lagomarsino: The information, if published would enable foreign and domestic competitors to gain significant advantages in the same markets. It has always been public policy to insure confidentiality of competitive business information. . . .
>
> If the government requires business to supply confidential information, then government should provide protection for that information.

*Id.* at 25,639.

The Senate adopted an amendment with the June 30, 1980, cutoff with little debate, but the statement of Senator Hatch, who introduced the amendment, reveals that the purpose of the cutoff date was to protect information already submitted to the Commerce Department from public disclosure and to give American businesses a period to adjust to the public disclosure of the information (except licensing information) submitted after the cutoff date:

> Mr. Hatch: Mr. President, I am introducing an amendment to delete the indefinite blanket exemption to the Freedom of Information Act requests and replace it with an exemption until June 30, 1980. This will give exporters almost a year's time to prepare for a change in the law at that time, which would result in all export control information being subject to the Freedom of Information Act except for license applications. These license applications are the items that exporters are most concerned about

> becoming available to their competitors, plus they contain
> sensitive national security information.

*Id.* at 20,012–13.

On the basis of the language of § 12(c) as explained by its legislative history, it is our view that § 12(c) was not intended to prohibit disclosure to other federal agencies and that, to the extent it prohibits disclosure at all, it is merely a prohibition against *public* disclosure. We conclude, therefore, that disclosure to federal law enforcement and intelligence agencies of information obtained pursuant to an information "collection request" is authorized by the Paperwork Reduction Act of 1980, if not otherwise prohibited by another statute.[3]

That authorization does not, however, necessarily permit federal law enforcement and intelligence agencies to disclose such information to the public because the Paperwork Reduction Act[4] subjects those agencies to the same restrictions on public release which bind the Department of Commerce. Thus, before releasing to the public information obtained under the Export Administration Act prior to June 30, 1980, and licensing information obtained after June 30, 1980, it may be necessary, in the absence of an overriding authorization for such release, to obtain a determination by the Secretary of Commerce that such a release would be in the national interest. If there are certain classes of information the release of which to the public would be in the national interest, we perceive no statutory bar to the Secretary's making such a general determination and thus removing any § 12(c) restrictions on public release.

### III. Information Not Covered by the Paperwork Reduction Act

With respect to any information obtained under the Export Administration Act which is not regulated by the Paperwork Reduction Act, we believe that any information that is available to the public because it

---

[3] For example, if the information concerns individuals and is contained in a system of records, disclosure to law enforcement agencies may be prohibited by the Privacy Act, 5 U.S.C. § 552a, unless such disclosure qualifies for and has been published as routine use or unless the head of the law enforcement agency submits a written request to the Department of Commerce specifying the particular portion of a record desired and the law enforcement activity for which the record is sought.

We do not agree with the Department of Commerce that 18 U.S.C. § 1905, which prohibits the disclosure of confidential trade information unless authorized by law, would bar interagency disclosure because, assuming no other statutory prohibition against disclosure, § 3510 of the Paperwork Reduction Act would authorize the disclosure. 44 U.S.C. § 3510.

[4] The Paperwork Reduction Act provides

> If information obtained by an agency is released by that agency to another agency, all the provisions of law (including penalties which relate to the unlawful disclosure of information) apply to the officers and employees of the agency to which information is released to the same extent and in the same manner as the provisions apply to the officers and employees of the agency which originally obtained the information. The officers and employees of the agency to which the information is released, in addition, shall be subject to the same provisions of law, including penalties, relating to the unlawful disclosure of information as if the information had been collected directly by that agency.

94 Stat at 2822, 44 U.S.C § 3510 (Supp. IV 1980).

261

is not exempt from disclosure under the Freedom of Information Act should also be available to other federal agencies. For information that is not available to the public, either because it is licensing information obtained prior to June 30, 1980, or information acquired after June 30, 1980, which qualifies for another FOIA exemption, a more difficult question arises whether the information may be disclosed to federal law enforcement and intelligence agencies. The fact that § 12(c) does not prohibit disclosures to other federal agencies may not necessarily mean that interagency disclosure of non-public information not covered by the Paperwork Reduction Act is authorized.

The existence of an affirmative authorization in the Paperwork Reduction Act for certain information arguably implies that some authorization is required, whether by statute, either expressly or by necessary implication, or by substantive regulation. Moreover, it may be necessary to determine whether there is an authorization for disclosure to federal law enforcement and intelligence agencies to avoid the strictures of 18 U.S.C. § 1905. Section 1905 [5] requires that any disclosure by federal employees of trade secrets or confidential business be "authorized by law." [6] The phrase "authorized by law" does not mean that the authorization must be "specifically authorized by law"; it is sufficient that the disclosure is "authorized in a general way by law." 41 Op. Att' Gen. 166, 169 (1953). The following have been recognized as lawful sources of disclosure authority under § 1905 or its predecessors: subpoenas (*Blair* v. *Oesterlein Machine Co.*, 275 U.S. 220, 227 (1927), *United States* v. *Liebert*, 519 F.2d 542, 546 (3d Cir.), *cert. denied*, 423 U.S. 985 (1975)); requests of congressional committees acting within the limits of their jurisdiction and authority (41 Op. Att'y Gen. 221 (1955)); substantive regulations, provided that the authority on which the regulation is based includes, either expressly or by necessary implication, the power to waive the confidentiality of the information (*Cf. Chrysler Corp.* v.

---

[5] Section 1905 reads:

> Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.

> 18 U.S.C. § 1905.

[6] The question whether 18 U.S.C. § 1905 applies to intragovernmental transfers of information has never been resolved. As is evident from the inclusiveness of the words of the statute, a literal reading of its provisions would seem to prohibit interagency disclosures. Opinions construing § 1905 and its predecessor statutes have avoided resolution of the scope of § 1905 by finding legal authorization for the disclosure sought. 31 Op. Att'y Gen. 541 (1919); 41 Op. Att'y Gen. 221 (1955).

*Brown,* 441 U.S. 281, 294–316 (1979)); or necessary statutory implication (41 Op. Att'y Gen. 106 (1953)).

It is unnecessary, however, to decide the question whether an independent authorization for disclosure to federal law enforcement and intelligence agencies is required because the Secretary of Commerce could under § 12(c) authorize disclosure to federal law enforcement and intelligence agencies by determining that failure to make such disclosures would be contrary to the national interest. We believe that the authority to permit such interagency disclosure is necessarily included in the greater power to disclose information publicly upon a national interest determination. As discussed above, we perceive no statutory bar to making such a determination, for a general class of information or on some other generalized basis. In the exercise of his discretion to make a national interest determination under § 12(c) to release information, the Secretary of Commerce is, of course, subject to the review and direction of the President. *Congress Construction Corp.* v. *United States,* 314 F.2d 527, 530–31 (Ct. Cl.) *cert. denied,* 375 U.S. 817 (1963); 7 Op. Att'y Gen. 453, 469–70 (1855). Thus, the President has the power, which President Carter exercised during his Administration, to direct the Secretary to make such a determination and authorize release of information obtained under the Export Administration Act to law enforcement and intelligence agencies on a routine basis if the President determines it would be contrary to the national interest to withhold such information from those agencies.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*