**UNITED STATES of America**

v.

**James W. GREENLEE, Appellant.**

**No. 74–2106.**

United States Court of Appeals, Third Circuit.

Argued April 15, 1975.

Decided May 28, 1975.

5. See Footnote 4, *supra.*

Stanford Shmukler, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Richard R. Galli, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Defendant James W. Greenlee appeals from his conviction, after a jury trial, of willfully failing to file income tax returns for the tax years 1970 and 1971 in violation of 26 U.S.C. § 7203 (1970).

Many facts are undisputed and may be briefly summarized. Defendant, an attorney, was employed in 1970–71 by an agency of the City of Philadelphia and earned sufficient income to require the filing of an income tax return for each of those years. However, Internal Revenue Service records reflect no return for defendant for the tax year 1970. With respect to the 1971 return, defendant was granted an extension for filing until May 19, 1972, a notice of non-filing was sent to and received by him in Septem-

ber 1972, and the return was filed in an envelope postmarked December 28, 1972.

On December 26, 1972, defendant met with IRS Special Agent David Patella and was confronted with the fact that the IRS had no record of returns for either 1970 or 1971. At that time defendant stated that he had filed the 1970 return in a timely fashion and that he had mailed the 1971 return during the week prior to the meeting, both returns with taxes due but without remittances. The next day, defendant produced for the agent copies of both returns bearing information substantially corresponding to figures he had recited to the agent from memory at their first meeting.

The bulk of the government's testimony at trial was devoted to establishing the IRS procedures for handling returns and the operation of the Service's computer system. The prosecution relied for proof of non-filing of a 1970 return on a manually prepared "Certificate of Assessments and Payments" and a computer printed "Transcript of Account" for the tax year 1970. A one page excerpt from a list of names of non-filers for the tax year 1970 to whom notices of delinquency were allegedly sent in April 1972 was also offered into evidence by the prosecution in an effort to establish that the defendant had been informed that the IRS had no return for that year.

The government's evidence with respect to the 1971 return included copies of defendant's request for an extension for filing and its rejection, the September 1972 notice of non-filing and a 1971 Form 1040 signed by defendant with an attached envelope postmarked December 28, 1972. Special Agent Patella also testified concerning defendant's statements to him that the 1971 return was not filed until the week prior to their meeting of December 26, 1972. The prosecution's evidence was completed by the testimony of a postal official that there were normal collections at defendant's office on December 26–27, 1972, and that the earliest that an envelope postmarked December 28, 1972, could have been collected there was December 27, 1972.

The defendant and his wife testified in his behalf. The defendant claimed that he mailed the 1970 return late on the evening of April 15, 1971, and his wife verified that she signed the return on that date, that her husband left to mail it, and that he returned to describe the confusion at the post office.

The defendant attributed his late filing of the 1971 return to the complicated nature of the return and his total involvement during 1972 in an investigation of his employing agency. He maintained that he mailed the 1971 return at his office on December 24, 1972. The defense also called a taxpayer whose name appeared directly below that of defendant on the list of individuals to whom notices of non-filing for 1970 were purportedly sent. This witness testified that his return had been timely filed and a refund paid him, and that he had never received a notice that the IRS had no record of a return for him for 1970. A defense computer expert highlighted for the jury possible areas of error in both the input and retrieval aspects of the IRS record and computer systems.

*Sufficiency of the Evidence*

Defendant first asserts that the evidence was insufficient to establish beyond a reasonable doubt that the 1970 return was not filed and that the government failed to establish willfulness with respect to the failure to timely file either return. In examining the evidence to determine whether it is sufficient to support the jury verdict of guilty, we must view the evidence adduced in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Cades, 495 F.2d 1166, 1169 (3rd Cir. 1974).

Defendant maintains that his testimony that he did in fact file the 1970 return is sufficient to overcome the government's evidence that it has no record of a return, and cites a number of civil cases in the United States Tax Court in support of his position, *e. g.*, Harzi v. United States, 73–2 U.S.T.C.

9712 (T.C.1973). In essence, defendant asks us to weigh evidence and judge credibility in the same manner as the Tax Court which sat as a fact-finder in those cases and determined that the government's negative evidence was insufficient to overcome the testimony of a taxpayer heard by the court and found to be credible.

 Our function is considerably more limited. We neither weigh evidence nor judge the credibility of witnesses. These are matters for the jury. We consider only whether, taking the evidence in its most favorable view to the government, it would permit the jury to find this element established beyond a reasonable doubt. We conclude that the government's evidence that the IRS had no record of a return, when evaluated in light of the evidence as to the recordkeeping procedures of the Service, was sufficient to permit such a finding. The jury's decision to reject defendant's testimony to the contrary is not subject to appellate review. Government of Virgin Islands v. Gereau, 502 F.2d 914, 921 (3rd Cir. 1974), cert. denied, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).

 We must also reject the contention that the evidence was insufficient to prove willfulness with respect to the failure to file in each of the two years. In our view, the defendant's arguments on this score misconceive the meaning of the word "willfully" in 26 U.S.C. § 7203 and its companion statutes, 26 U.S.C. §§ 7201–07, all of which use the word in the same sense. United States v. Bishop, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). In the context of these statutes, the requirement that an act be done "willfully" means that it must have been activated by a "bad purpose or evil motive." *Id.* at 361, 93 S.Ct. 2008. A review of the evidence convinces us that the government established a willful failure to file under this standard.

Defendant was an attorney with a substantial income who the jury could infer should have been aware of his obligation to file timely tax returns and who had in fact filed such returns in previous years. The testimony of Special Agent Patella showed that defendant demonstrated an awareness of that obligation during his meetings with the agent. Yet, when construed most favorably to the government, the evidence shows that defendant did not file a return for 1970, did not mail his 1971 return until after a meeting with an IRS agent on December 26, 1972, and misrepresented both the fact of filing the 1970 return and the time of filing the 1971 return to the agent investigating his case. The evidence so construed also displays a two year pattern of derelictions in fulfilling defendant's obligation to make timely returns, itself indicative of the willfulness of his actions.

 Defendant contends that any evidence respecting events after the due dates for the filing of returns for the respective years is irrelevant to the crucial question of his state of mind at the time he failed to make the required returns. We reject this contention. *See* United States v. O'Connor, 433 F.2d 752, 754 (1st Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); United States v. Litman, 246 F.2d 206 (3rd Cir.), cert. denied, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957). We are satisfied that the evidence taken as a whole warranted a finding that the failure to file here was attended by the bad purpose of an intention to violate the law by not fulfilling defendant's obligation of timely filing of which he was well aware. The existence of willfulness is not legally negated by the excuse of pressing business arising from the investigation of defendant's employing agency, *see* Bernabei v. United States, 473 F.2d 1385 (6th Cir. 1973), nor does the late filing of the 1971 return preclude finding a willful violation of the statute, which makes a misdemeanor the failure to "make such return . . . at the time or times required by law . . . ." 26 U.S.C. § 7203; Sansone v. United States, 380 U.S. 343, 354, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

We conclude, therefore, that the evidence here was sufficient for the jury to find that defendant did not file a return in 1970 and that his failure to file returns when required by law in 1970 and 1971 was willful within the meaning of § 7203.

### Errors in the Court's Instructions

■ Defendant alleges that the court erred in its instructions to the jury with respect to the definition of "willful" and in its statements regarding the manner in which the jury should treat the government's evidence that it had no record of a return for 1970.

On the issue of willfulness the court instructed:

> The word "willful" as used in these statutes means voluntary. It means purposeful, deliberate, and intentional as distinguished from accidental, inadvertent or negligence. Mere negligence, even gross negligence, is not sufficient to establish willfulness. An act is done willfully if done knowingly and with a specific intent to do something that the law forbids, that is to say, with a bad purpose, either to disobey or disregard the law.

> The only bad purpose or bad motive necessary for the Government to prove in this case, however, is the deliberate intention not to file returns which the defendant knew ought to be filed.

Defendant objects only to the last sentence which he contends "water[ed] down the bad purpose or bad motive requirement." Defendant contends that the evil purpose requirement demands that defendant have acted with some purpose to conceal his tax liability from the government.

In *United States v. Bishop, supra,* the Supreme Court analyzed the meaning of "willfully" in 26 U.S.C. § 7203 and its companion statutes. As the Court there noted, various formulations have been given to the word to express the underlying meaning of a "voluntary, intentional violation of a known legal duty." *Bishop,* 412 U.S. at 360, 93 S.Ct. at 2017. These formulations include the bad purpose or evil motive described in United States v. Murdock, 290 U.S. 389, 398, 54 S.Ct. 223, 78 L.Ed. 381 (1933). However, the use of terms such as "bad purpose" does not imply that the government must prove more than that the defendant acted with a guilty mind, i. e., voluntarily and with the deliberate intent to violate the law. We think the instruction here adequately conveyed the concept that liability can be based, in the language of the trial court, only on a "specific intent to do something which the law forbids. . . ." We find no error in inclusion of the sentence of which defendant complains and conclude that the instruction as a whole comports with the law as set forth by the Supreme Court in *Bishop,* which was relied upon by this court in United States v. Goldstein, 502 F.2d 526 (3rd Cir. 1974).

■ We also find no error in the trial court's instruction that "the mere possibility" that the defendant's 1970 return did not reach the IRS or was not recorded was not sufficient to raise a reasonable doubt that he was not guilty of the offense charged. Such an instruction merely recognized that the government need not prove its case to an absolute certainty, only beyond a reasonable doubt. We do not perceive how such an instruction shifted the burden to the defendant to prove the computer wrong, particularly in light of the court's repeated instruction that the government bore the burden of proving defendant's guilt beyond a reasonable doubt.

### Cross-Examination of the Defendant

During the course of the government's cross-examination, defendant was questioned with respect to his city tax return for 1970 which on its face showed that it was not filed until April 1972. The return was admitted into evidence over defense objection that it introduced into the trial evidence of a crime not charged by the indictment.

■ The government used the return and examination based on it to impeach defendant's testimony by demonstrating that despite his claim of total

involvement with a 1972 investigation of his agency, he nevertheless found time during that year to prepare and file a city tax return. The government also attempted to demonstrate that defendant's federal return for 1970 had not been prepared at the time defendant filed the city return in 1972 by calling attention to discrepancies that existed between deductions taken on the city return and those claimed on the copy of the 1970 return which defendant produced at his second meeting with Agent Patella. No limiting instruction was requested by the defense, and the absence of such an instruction does not rise to the level of plain error of which we should take notice under Rule 52(b), F.R. Crim.P.

We find no error either in admission of the city return for the purpose indicated or in the cross-examination of the defendant regarding it. This evidence was pertinent to the issue of defendant's credibility, a most significant aspect of the trial since the defense hinged primarily on his testimony. Furthermore, the exhibit and testimony provided an indication of the defendant's attitude toward reporting and paying taxes generally, and was thus probative on the question of whether he acted willfully in his failure to file federal returns. United States v. Magnus, 365 F.2d 1007 (2nd Cir. 1966).

*Withholding of Evidence by the Prosecution*

■ Prior to trial, counsel for the defendant requested that the prosecution furnish information respecting the number of individuals who "filed late in the Philadelphia region" and the number of individuals prosecuted "in this District" for failure to file within the five years prior to defendant's trial. Apparently, this information was never produced by the government. At no time, however, did defendant move the trial court pursuant to Rule 16, F.R.Crim.P., to compel production of this information by the government, and we decline to consider this matter for the first time on appeal.

■ Beyond the specific requests noted, defendant also requested, prior to trial, that the prosecution disclose any information in the government's files that "might be helpful to the Defendant," relying on the authority of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Both before and during trial, the government denied that it possessed any evidence which should be disclosed under *Brady*. The defendant now contends that the prosecution's failure to produce the list of non-filers for 1970 from which an excerpt was introduced at trial violated the principle of *Brady*.

We note initially that unlike *Brady* and its progeny, see 8 J. Moore, Federal Practice ¶ 16.06 (1975), complete suppression of evidence favorable to the defendant is not involved in this case; one volume of the list of non-filers sought by the defense was in fact produced at trial and an excerpt therefrom offered and received into evidence. Defendant's contention relates, therefore, to the timeliness of disclosure and is grounded in the greater use to which the information could have been put if disclosed prior to trial.

With respect to the *Brady* issue, we are again faced with a question never presented to the trial court. No motion for disclosure of any list of non-filers was presented to the court prior to trial; no objection was entered when the excerpt was marked or received into evidence nor was a continuance sought; and the government's alleged violation of the principles of *Brady* was not raised to the trial court in defendant's post-trial motions.

A search based on the one page of 23 names received into evidence produced one defense witness who testified that his name erroneously appeared on the list of non-filers for 1970. This testimony was cited by the defense counsel in his closing argument as evidence of the inaccuracy of IRS records, and the existence of at least one error in 23 names was used by counsel to urge the jury to consider the likelihood that a proportion-

ate number of errors might have been found had there been an investigation of the whole list, which defense counsel calculated to include some 100,000 names. In light of the fact that the defense was able to use the one page excerpt as a sample of probable flaws in the recording system, and considering the failure of defendant to raise the inadequacy of prosecution disclosure to the trial court, we find no error of which we should take cognizance even if we make the highly questionable assumption that the list of non-filers was indeed "*Brady*" information.[1]

### Other Contentions of Defendant

We will treat the remaining issues raised by defendant in summary fashion. The district judge correctly denied defendant's motion to quash the indictment because of selective prosecution since the defendant failed to meet his burden of showing that there was "intentional or purposeful discrimination" in his prosecution. United States v. Berrigan, 482 F.2d 171, 174 (3rd Cir. 1973). We find no error in the court's limitation of the cross-examination of Special Agent Patella to exclude questions bearing on the issue of discrimination, a matter for the court and not the jury. *Id.* at 174–75. We conclude that the government made a sufficient showing to justify admission of the documents offered to establish defendant's failure to file his 1970 return as business records. Finally, we find that the district court acted within the bounds of its permissible discretion in limiting defense character witnesses to thirteen and in denying defendant's motion requesting that his computer expert be granted access to the IRS Computer Center. The motion for access was clearly untimely since it was not presented until three days prior to the scheduled commencement of a trial already pending for almost a year.

The judgment of the district court will be affirmed.

1. We are not required here to reach the government's argument that disclosure of the lists is prohibited by 26 U.S.C. § 6103. See

United States v. Liebert, No. 74–2294 (3rd Cir., argued April 18, 1975).