UNITED STATES of America

v.

Edward PEARCE.

Crim. No. 77–8.

United States District Court,
E. D. Pennsylvania.

March 29, 1977.

J. Douglas McCullough, Organized Crime & Racketeering Section, Philadelphia Strike Force, Philadelphia, Pa., for plaintiff.

George A. Bachetti, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

Presently before the Court are the post-trial motions of the defendant, Edward Pearce, for a judgment of acquittal and/or for a new trial. On February 24, 1977, the jury returned a verdict of guilty on the one count indictment which charged the defendant with making a false declaration before a federal grand jury in violation of 18 U.S.C. § 1623. After carefully considering all of the grounds raised in defendant's motions, the Court has determined that defendant's motions must be denied.

### Sufficiency of the Evidence

The defendant contends that the Court erred in denying his motion for a judgment of acquittal made during the trial and contends further that there is insufficient evidence to support the verdict. The evidence produced at trial, viewed in a light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Armocida,* 515 F.2d 29 (3d Cir. 1975), is more than sufficient to support the jury verdict. We summarize it as follows:

Raymond McElhenny, a detective with the New Jersey State Police, testified that on January 14, 1976 at 12:30 a. m., he interviewed the defendant in connection with an investigation of the homicide of Michael Iconelli. (N.T. 2–39, 2–41). During this interview, which was attended by Detective Frames for the Prosecutor's Office of Gloucester County, Detective McElhenny informed defendant that he was investigating Iconelli's death and advised him of his constitutional rights. (N.T. 2–40).

The defendant stated that he was a good friend of Iconelli's, that Iconelli was friendly with a Mr. Vallone, and that he had no information concerning Iconelli's death. (N.T. 2–40—41). Detective McElhenny interviewed defendant again at 11:45 a. m. on the same day. (N.T. 2–41). He again told the defendant that he was investigating Iconelli's death and advised him of his constitutional rights. (N.T. 2–41, 51). Detective McElhenny testified that: "Mr. Pearce told me that he and Mr. Vallone had had a conversation and Mr. Vallone told him, Mr. Pearce, that he, meaning Mr. Vallone, had blown Mike away with his own sawed-off shotgun, just the way he wanted to go." (N.T. 2–42). Detective McElhenny took notes during this interview (N.T. 2–43) and his notes, which are in evidence, appear consistent with his testimony. At this interview the defendant told Detective McElhenny that he would not so testify in court because he was afraid of Vallone. (N.T. 2–47—48). Detective McElhenny testified that as the investigator on the Iconelli case, he never disclosed to anyone that a shotgun had been used. (N.T. 2–47).

Detective Frames, who had been present at the beginning of Detective McElhenny's second interview with the defendant (N.T. 2–102), testified that he had left the room and when he returned Detective McElhenny requested the defendant to repeat a statement which the defendant had made. (N.T. 2–102—103). The defendant then stated in the presence of Frames "that Joe Vallone had told [the defendant] that Mike was killed or died the way he wanted to go, that he was killed with his own shotgun." (N.T. 2–103). Detective Frames did not take notes during this interview. (N.T. 2–103).

The parties stipulated that the federal grand jury before which the defendant appeared was duly impaneled and that the transcript of the defendant's appearance before said grand jury on August 18, 1976 was accurate and complete. (N.T. 2–26). Charles Hargens, the foreman of the grand jury, testified that he administered the oath to the defendant. (N.T. 2–96—97). The

grand jury transcript contains the following testimony of the defendant:

Q Now then, did you ever tell Detective McElhenny that Joseph Vallone had told you that Mike was killed by Vallone?

A No, I most certainly did not.

Q You never told Detective McElhenny that at all?

A No. If I did that, I'd be accusing somebody of murder, right?

Q Did you ever say words to the effect that Mike, to Detective McElhenny back in January of '76, that, "Mike was killed by me just the way he wanted to go with his own sawed off shotgun." Me, meaning Joe Vallone was telling you that and those were the words you used.

A No, those were not the words.

Q Did you ever tell him that you had been threatened and that you were, in fact, afraid of Joseph Vallone?

A No, I had no cause to be afraid of him.

Q But prior to him asking you to do that, you had never made that other statement about the sawed off shotgun?

A Which statement?

Q That Vallone had told you that he killed him with Mike's own sawed off shot gun.

A No.

Q But it is your testimony that you never stated to Detective McElhenny that Icanelli was killed just the way he wanted to go by his own sawed off shot gun?

A No, sir. I did not.

The parties also stipulated that the New Jersey medical examiner listed four gunshot wounds in the back of the head as the cause of death of Iconelli, and that the medical examiner also discovered shotgun pellets in the left leg. (N.T. 2–27).

The defendant took the stand. He testified that he did not give Detective McElhenny any information concerning the murder of Iconelli. (N.T. 2–121). The defend-

ant testified that the only thing he told Detective McElhenny was that "Vallone had mentioned to me that he heard that Mike [Iconelli] was shot with a shotgun." (N.T. 2–122).

■ The jury found the defendant guilty of violating 18 U.S.C. § 1623 which reads in pertinent part:

(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording or other material, knowing the same to contain any false material declaration. . . .

The evidence presented to the jury was more than sufficient to support the jury's verdict. Matters of credibility are the exclusive province of the jury, *United States v. Greenlee,* 517 F.2d 899, 903 (3d Cir. 1975), which in this case accepted the government's version of the January 14, 1976 interview and rejected the defendant's testimony. The defendant argues that the government presented two diametrically opposed witnesses on the question of whether defendant's statement to the grand jury was false, one which supports defendant's guilt while the other supports his innocence. Defendant further argues that when two conclusions can reasonably be drawn from the evidence, one of innocence and the other of guilt, the jury should adopt the one of innocence. Detectives McElhenny and Frames did not give conflicting versions of defendant's statement concerning the death of Iconelli. Detective McElhenny's testimony was more complete than the brief testimony of Detective Frames, who was not cross-examined. Furthermore, Detective McElhenny testified that he took notes during the interview, which notes are consistent with his testimony. Detective Frames did not take notes and was not present throughout the entire interview. The jury was thus presented with a reasonable basis on which it could have concluded that the testimony of the two detectives was corroborative and not contradictory. Further-

more, as stated in *United States v. Hamilton,* 457 F.2d 95, 98 (3d Cir. 1972),[1] "[E]vidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt."

### Materiality

The defendant raises three arguments in connection with materiality, which is an essential element of the crime of making a false statement before a grand jury. The defendant contends that the Court erred in failing to grant his motion to dismiss, that the government failed to prove the element of materiality at trial, and that the Court erred in instructing the jury that the issue of materiality was a matter for the Court's determination.

Prior to trial defendant moved to dismiss the indictment on the ground that it did not contain allegations sufficient to allow meaningful judicial review as to materiality. In *United States v. Slawick,* 548 F.2d 75 (1977), our Third Circuit reversed a conviction under 18 U.S.C. § 1623 because the allegation in the indictment and bill of particulars made meaningful review of materiality impossible, stating:

> [W]e hold that a conviction under 18 U.S.C. § 1623 may not stand where the indictment fails to set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods. at 83.

The Court denied the defendant's motion to dismiss on the basis of the indictment, the bill of particulars and the amended bill of particulars.

The indictment charges that the grand jury before which defendant appeared was conducting an investigation to determine the identity of the person who conspired to murder and did murder Iconelli, who had previously furnished information concerning violations of federal narcotics law to the United States Department of Justice. The indictment set forth the statement allegedly made by the defendant to Detective McElhenny and the defendant's grand jury testimony. In the bill of particulars the Government stated that if the defendant had repeated before the grand jury his conversation with Vallone, this would have been evidence of Vallone's involvement and that the defendant's failure to admit that he had spoken these words totally frustrated the grand jury's investigation. At a hearing before trial the Government produced an amended bill of particulars which stated that after several witnesses appeared before the grand jury their investigation into Iconelli's death focused on Vallone, and that to date the grand jury has not returned an indictment and is continuing its investigation. The indictment in this case set forth in precise language the falsehood alleged and the factual basis of its falsity with sufficient clarity to serve as a basis for a jury's verdict. As to materiality, there were sufficient allegations in the indictment to enable the Court to determine that the false statement was material. As pointed out above, since the grand jury was investigating the death of Iconelli, we cannot imagine anything more material than the statement by the defendant that Vallone told him that he (Vallone) killed Iconelli.

In *United States v. Sisack,* 527 F.2d 917, 920 (9th Cir. 1976), cited in *Slawick, supra,* the Court set forth a test for materiality, stating:

> [t]he only requirement is that the question be material to a subject of grand jury inquiry. The evidence need not be material to the main issue and it need not be directed to the primary subject of the investigation. It is material if it is relevant to any subsidiary issue then under consideration.[2]

*See United States v. Parr,* 516 F.2d 458 (5th Cir. 1975) where the Court stated: "The test of materiality is whether the false testimony was capable of influencing the tri-

---

1. Quoting *United States v. Giuliano,* 263 F.2d 582, 584 (3d Cir. 1959).

2. Quoting *United States v. Percell,* 526 F.2d 189, 190–91 (9th Cir. 1976).

bunal on the issue. *Barnes v. United States,* 5th Cir. 1967, 378 F.2d 646, *cert. denied,* 390 U.S. 972, 88 S.Ct. 1056, 19 L.Ed.2d 1184."

The defendant also contends that the Government failed to prove the element of materiality at trial. Charles Hargens, the foreman of the grand jury, testified that the defendant was called before the grand jury in connection with its investigation of the homicide of Iconelli. (N.T. 2–99). He testified that the grand jury investigation was still continuing and that no indictment had been returned in connection with the investigation. (N.T. 2–100, 101). The transcript of the testimony of the defendant before the grand jury was admitted into evidence. The statements of the detectives as heretofore discussed were also testified to. The evidence was more than sufficient on the issue of materiality.

The defendant also contends that the Court erred in instructing the jury that the issue of materiality was a matter for the Court's determination and that the Court had determined that the statement was material. It is well-settled that materiality is a question of law for the Court. *United States v. Slawick, supra,* 548 F.2d at 79, n. 8; *United States v. Parr, supra,* 516 F.2d at 470. In *United States v. Sisack, supra,* 527 F.2d at 920, n. 2, the Court said: "We note that . . . the materiality of appellant's responses before that body are questions for the Court not the jury. *Vitello v. United States,* 425 F.2d 416, 423 (9th Cir. 1970). *Although the trial court improperly submitted [this] question to the jury,* its verdict conforms to the law and no worthwhile purpose would be served by requiring a new trial." (citation omitted). (emphasis added).

### Corpus Delicti

■ The defendant argues that the Government failed to prove the corpus delicti of the crime, relying on *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). The jury found the defendant guilty of violating 18 U.S.C. § 1623. They were instructed that the essential ele-

ments of this crime, each of which the Government had to prove beyond a reasonable doubt, are. (1) that the defendant was under oath in a proceeding before a grand jury of the United States, (2) that the defendant made the false material declaration to the grand jury charged in the indictment, and (3) that the defendant made such false declaration knowingly. As heretofore discussed, there was more than sufficient evidence as to each element to support the verdict. For a conviction pursuant to 18 U.S.C. § 1623, it is no longer necessary that proof be made by any particular number of witnesses or by documentary or other type of evidence. 18 U.S.C. § 1623(e). Furthermore, the legislative history discloses:

> This title [Title IV, False Declarations] is intended to facilitate Federal perjury prosecutions and establishes a new false declaration provision applicable in Federal grand jury and court proceedings. It abandons the so-called two-witness and direct evidence rule in such prosecutions . . . . 1970 U.S.Code Cong. & Ad. News, pp. 4007, 4008.

*See United States v. Gross,* 511 F.2d 910 (3d Cir. 1975), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249.

While we have not discussed herein all of the contentions which were raised by defendant, we have, however, reviewed the record and considered all of the grounds alleged by the defendant in his motion for a judgment of acquittal and/or for a new trial and we find that none of them either singly or collectively has sufficient substance to merit any further discussion as a basis for granting a judgment of acquittal or a new trial in this case.

For all of the aforementioned reasons, we deny defendant's motions.