**UNITED STATES of America,**

v.

**Rao GOLLAPUDI.**

**Crim. No. 96–220 (WGB).**

United States District Court,
D. New Jersey.

Nov. 26, 1996.

Faith S. Hochberg, United States Attorney, by Carlos F. Ortiz, Assistant U.S. Attorney, for U.S.

Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, P.C., by John O'Toole, David L. Kay, for Rao Gollapudi.

## OPINION

BASSLER, District Judge:

Defendant Rao Gollapudi was indicted on nine counts of violation of 26 U.S.C. § 7202,[1]

the willful failure to collect or truthfully account for and pay over federal withholding taxes and FICA taxes, for the final quarter of 1989, for all four quarters of 1990, and for all four quarters of 1991. Additionally, Defendant Rao Gollapudi was indicted on three counts of violation of 26 U.S.C. § 7206(1),[2] willfully making and subscribing false personal income tax returns, for the tax years 1989, 1990, and 1991.

The Defendant waived his constitutional right to a jury trial in a knowing and intelligent manner, after a colloquy with this Court.

After a bench trial, for the following reasons, this Court finds beyond a reasonable doubt the Defendant, Rao Gollapudi, GUILTY of Counts One to Nine of the indictment, violations of 26 U.S.C. § 7202. Furthermore, this Court finds beyond a reasonable doubt the Defendant, Rao Gollapudi, GUILTY of the counts ten to twelve of the indictment, violations of 26 U.S.C. § 7206.

## FINDINGS OF FACT

### I. BACKGROUND

Rao Gollapudi is the President and sole shareholder of Softstar Computer Consultants, Inc. This corporation was incorporated in Michigan in July 1984 and has operated in New Jersey since 1985.

Though the company began with only two employees, for the years 1989 through 1991, Softstar employed approximately 15 people. At the end of each pay period, Softstar's employees were paid their salary by check. The checks reflected the fact that Mr. Gollapudi, as Softstar's President, withheld federal income taxes and Federal Insurance Contributions Act (FICA) taxes from Softstar employees' paychecks. These federal income taxes and FICA taxes that were withheld

---

1. 26 U.S.C. § 7202, **Willful failure to collect or pay over tax,** reads as follows: "Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

2. 26 U.S.C. § 7206(1), *Fraud and false statements,* reads as follows: "(1) **Declaration under penalties of perjury.**—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.

remained in the corporate checking account. Despite the fact that Mr. Gollapudi withheld the taxes from his employees' paychecks and issued them official Statements of Wages, Forms W–2, Mr. Gollapudi never filed Employer's Quarterly Tax Returns, Forms 941 and never remitted the withheld funds to the Internal Revenue Service. From the last quarter of 1989 to the last quarter of 1991, Mr. Gollapudi failed to remit approximately $320,313 in federal income taxes and FICA taxes withheld from his employees.

For the tax years 1989, 1990, and 1991, Mr. Gollapudi filed his own income tax returns with the Forms W–2 he had generated for all Softstar employees. Using the Forms W–2 as proof of withholding, Mr. Gollapudi took a $6000 tax credit on his personal tax returns, despite the fact that he knew the that the W–2 was fraudulent as Softstar had not remitted any taxes withheld to the federal government.

In April, 1996, the Grand Jury in and for the District of New Jersey returned a twelve-count Indictment charging Rao Gollapudi with violating two provisions of the Internal Revenue Code, 26 U.S.C. §§ 7202 and 7206(1).

## II. *LEGAL ARGUMENT*

■ In order to establish guilt of tax evasion, the government must prove, beyond a reasonable doubt: (1) the existence of a tax deficiency; (2) an affirmative act constituting an attempted evasion of payment of taxes; and (3) willfulness. *United States v. Ashfield,* 735 F.2d 101, 105 (3d Cir.), *cert. denied,* 469 U.S. 858, 105 S.Ct. 189, 83 L.Ed.2d 122 (1984), citing *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965). Neither the government nor the defendant dispute the existence of a tax deficiency. There is no real dispute that the evidence demonstrates that there was a tax deficiency and that Mr. Gollapudi did undertake affirmative acts that constitute an attempted evasion of the payment of taxes. The only issue is willfulness.

### A. *The Elements of Willfulness.*

■ Willfulness is defined in the tax cases as the "voluntary, intentional violation of a known legal duty." *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *United States v. Pomponio,* 429 U.S. 10, 11–13, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12 (1976); *United States v. Bishop,* 412 U.S. 346, 359–60, 93 S.Ct. 2008, 2016–17, 36 L.Ed.2d 941 (1973). Despite the fact that most cases interpret the word willfully in regard to violations of § 7201 and § 7206, the analysis is the same under 26 U.S.C. §§ 7201–07, all of which use the word willfully in the same sense. *United States v. Greenlee,* 517 F.2d 899, 903 (3d Cir.1975), citing *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973).

■ In a tax evasion case, willfullness has been defined by this Circuit as "an attempt made voluntarily and intentionally and with specific intent to keep from the government a tax imposed by the income tax laws which it was the legal duty of the defendants to pay to the government and which the defendants knew it was their legal duty to pay." *United States v. Ashfield,* 735 F.2d at 105.

Despite the Supreme Court's references to other formulations of the willfulness standard, the Court has made it clear that in the tax crime context, willfulness means simply a voluntary, intentional violation of a known legal duty. *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). The Supreme Court explained its definition by stating "[w]e did not, however, hold that the term [willfully] requires proof of any motive other than an intentional violation of a known legal duty." *Id.* Therefore, it is clear that in proving the defendant acted willfully, it is not necessary that the government establish that the defendant had an evil motive.

■ The need to prove specific intent for willfulness "does not imply that the government must prove more than that the defendant acted with a guilty mind, i.e., voluntarily and with the deliberate intent to violate the law." *United States v. Greenlee,* 517 F.2d 899, 904 (3d Cir.1975). "The only bad purpose or bad motive necessary for the Government to prove . . . is the deliberate intention not to file returns which the defendant knew ought to be filed." *Id.*

The standard for willfulness is clear. However, the inquiry to determine whether a defendant had the specific intent to violate a known legal duty is a fact intensive process, not subject to easy generalization. *Ashfield*, 735 F.2d at 105. Nonetheless, numerous courts have made it plain that the conclusion of willfulness may be reached through inferential proof. *Id.*

The Supreme Court found that "willful tax evasion may be proven by a consistent pattern of underreporting large amounts of income and by the taxpayer's failure to include all his income on his books and records." *Id.* citing *Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954); *see also United States v. Frank*, 245 F.2d 284, 287–88 (3d Cir.1957). Likewise, the Third Circuit held that "[w]illfulness, may however, be inferred from circumstantial evidence." *Ashfield*, 735 F.2d at 105. The Third Circuit has also found that "although mere understatement of tax liability cannot substantiate the charge, consistent understatement is evidence of willfulness." *United States v. Alker*, 260 F.2d 135, 148 (3d Cir. 1958).

In another case regarding willfulness of tax evasion, the Third Circuit held "a two year pattern of derelictions in fulfilling defendant's obligations to make timely returns, [is] itself indicative of the willfulness of his actions ... We are satisfied that the evidence taken as a whole warranted a finding that the failure to file here was attended by the bad purpose of an intention to violate the law by not fulfilling defendant's obligation of timely filing of which he was well aware." *United States v. Greenlee*, 517 F.2d 899, 903 (3d Cir.1975).

Most recently, in *United States v. Doan*, 710 F.2d 124, 126 (3d Cir.1983), the Third Circuit held that there was sufficient evidence, independent of defendant's underreporting of income, from which the jury could find the element of willfulness beyond a reasonable doubt. Despite the fact that the defendant was not assisted in filing his tax return, the Third Circuit noted "he was sophisticated enough in his preparation to itemize deductions for state, local, real estate, and sales taxes, interest paid on loans, contribu-

tions and certain business expenses which were contained in records he kept." *Id.* The Court held that the evidence was sufficient given the proof of a long-run pattern of reporting at variance with the taxpayer's defenses, the substantiality of the sums the taxpayer failed to report, and the number of times taxpayer received income checks he claimed to have forgotten. *Id.*

### B. *Rao Gollapudi Acted Willfully In Failing To Pay Over Taxes For His Employees.*

In order to find Mr. Gollapudi guilty of a violation of 26 U.S.C. § 7202, the United States must establish: (1) Defendant Rao Gollapudi was aware of the legal duty to file Forms 941; (2) Defendant Rao Gollapudi was aware of the legal duty to remit the taxes withheld from his employees to the Internal Revenue Service; and (3) Defendant Rao Gollapudi voluntarily and intentionally failed to file Forms 941 and remit the taxes withheld from his employees. (U.S.Atty.Br.)

Mr. Gollapudi's testimony on cross-examination undermined the credibility of his assertion that he did not intend to defraud the government. Furthermore, the testimony of the IRS agents, Softstar's former employees, and Mr. Gollapudi's former partner, Mr. Ayala, all demonstrate that Mr. Gollapudi knew about his obligations regarding withholding taxes, contradicting Mr. Gollapudi's claims of ignorance and negligence. The Court has identified nine important areas in Mr. Gollapudi's testimony which, when taken together, establish that Mr. Gollapudi voluntarily and intentionally violated his known legal duty to file Forms 941 and remit the taxes he had withheld from his employees.

#### 1. *Use of the Michigan Address for Softstar Constitutes Fraud.*

Mr. Gollapudi established Softstar Computer Consultants in 1984 in Michigan with a partner, Eshwar Ayala. (TR. I, p. 9) At the time, there were only two employees, Mr. Gollapudi and Mr. Ayala. (TR. I, p. 10) In late 1984, Mr. Gollapudi moved to New York, and in 1985 he moved to New Jersey, taking the company operations with him but leaving

the company's mailing address in Michigan. (TR. I, p. 11–13)

The address in Michigan used for the corporation was the address of Mr. Ayala's friend, but never the address of any of Softstar's operations. (TR. I, p. 11) Mr. Gollapudi testified that he used the Michigan address because both the employee identification numbers for the Forms W–2 and the certificate of incorporation listed the Michigan address as the corporate headquarters. (TR. I, p. 104) He continued to use the Michigan address long after Mr. Ayala had left Softstar. Indicative of Mr. Gollapudi's pattern of suspicious practices is the fact that when problems arose with taxation issues, Mr. Gollapudi told employees that the accountant in Michigan at the corporate headquarters address would take care of all problems. (TR. I, p. 180–182)

Despite Mr. Gollapudi's use of the Michigan address, it was not a valid address for the company. Consul–Tec, the company located at Suite 115, 6785 Telegraph Road, Birmingham, Michigan, from 1989 to 1993, stipulated that it was not associated in any manner with Softstar nor did it authorize Softstar to use its address for the receipt of mail. (Stip. Of John Eilerston, Consul–Tec, p. 186) Therefore, the use of the Michigan address between 1989 and 1992, if not before 1989, was fraudulent.

Moreover, as Mr. Gollapudi's former partner testified, the Michigan address on the Michigan Annual Profit Report for 1985 for Softstar was changed to Elmhurst, New York. (TR. I, p. 21–23). This was done to redirect all correspondence since the defendant was now living in New York and Mr. Ayala moved to New York where he was working full time for Softstar. (TR. I, p. 21–23).

2. *Forms 941 Were Submitted For 1984–1987 With Mr. Gollapudi's Knowledge.*

During 1984 and 1985, there is no dispute that Softstar prepared and filed Forms 941 with the IRS and also remitted the federal income taxes and FICA taxes withheld from Mr. Gollapudi's salary and Mr. Ayala's salary. (TR. III, p. 16) Despite Mr. Gollapudi's claim that Mr. Ayala alone was responsible

for all of the paperwork at that time, Mr. Ayala testified on direct examination that he and Mr. Gollapudi mailed all of the corporate records to their accountants, Hollander, Bordman & Winnick in Michigan and the accountants mailed back the corporate tax returns for their signatures. (TR. I, p. 26–27) The Forms 941 and personal income tax filings were done personally by Mr. Ayala and Mr. Gollapudi.

In 1984 and 1985, there were no employees of Softstar other than Mr. Gollapudi and Mr. Ayala. (TR. III, p. 16) Mr. Ayala testified to the fact that Softstar withheld taxes from the salaries of both himself and Mr. Gollapudi. (TR. I, p. 29) These taxes withheld were mailed to the IRS every quarter. (TR. I, p. 29) Mr. Ayala also testified that he filed Forms 941 with the IRS on behalf of Softstar every quarter. (TR. I, p. 30) On direct examination, Mr. Ayala testified that Mr. Gollapudi had knowledge that the Forms 941 were prepared quarterly and that the money was sent to the IRS quarterly because Mr. Ayala and Mr. Gollapudi lived in the same apartment when Mr. Gollapudi was in Michigan, worked on some of the forms together, and used to do most of their work together. (TR. I, p. 30)

In early 1986, Mr. Ayala quit Softstar and left the responsibility for filing Forms 941 solely in the hands of Gollapudi. (TR. III, p. 19) Mr. Gollapudi knew that Mr. Ayala had made payments to the IRS and that Mr. Ayala had been filing the forms with him, though Gollapudi was unfamiliar with the exact number of the form. (TR. III, p. 105) Shortly after Mr. Ayala partner left the company, Mr. Gollapudi failed to make any payment of employment taxes to the IRS. After the middle of 1986, Mr. Gollapudi testified that he stopped filing Forms 941 altogether. (TR. III, p. 20–21) On cross-examination, however, the Form 941 for March 1987 was shown to Mr. Gollapudi who vouched for its authenticity. (TR. III, p. 112)

Additionally, Mr. Gollapudi has testified to the fact that he knew he had to file. (TR. III, p. 21–22) In his meetings with the IRS in September, 1992, Mr. Gollapudi told an IRS agent that he was aware of his responsi-

bilities as an employer as far as paying the employees, filing W–2 forms, making federal tax deposits, and turning everything over to the IRS. (TR. II, p. 7) Later however, in his direct testimony, Mr. Gollapudi testified that he did not become aware of the obligation to file Forms 941 until after he met with an accountant in 1992. (TR. III, p. 34)

The Court finds that Mr. Gollapudi knew of the obligation to file Forms 941 quarterly and of the obligation to remit the taxes withheld from Softstar's employees.

3. *Mr. Gollapudi Purposefully Used Federal Tax Tables In Order To Determine Withholding For Each Employee and Create a W–2 Form Despite The Fact That He Did Not Remit the Taxes.*

In order to figure out the withholding taxes and FICA taxes, Mr. Gollapudi testified that he went to the IRS office to pick up a book with the tax tables. (TR. III, p. 108) Mr. Gollapudi, on direct examination, testified that he used the federal tax tables to figure out federal withholding tax, FICA, and other taxes. (TR. III, p. 22, 25) With this information, Mr. Gollapudi would construct false W–2 forms for his employees. (TR III, p. 22) On cross-examination, Mr. Gollapudi admitted that he learned how to generate Forms W–2 because he used the W–2s Mr. Ayala prepared to generate the W–2s for his employees. (TR III, p. 104)

The Court finds that while Mr. Gollapudi took affirmative acts to comply with federal tax laws regarding his employees by doing the hard part, figuring out the taxes, he also intended to avoid the painful part of the exercise, paying over the taxes to the federal government.

4. *Mr. Gollapudi Clearly Understood How The Federal Tax Withholding System Operates.*

There is no question that Mr. Gollapudi withheld federal taxes and FICA taxes from his employees' paychecks. Several employees testified that their after-tax checks reflected approximately two-thirds of their actual salary. (TR I, p. 115–117, 136–139). All of the Softstar employees who testified

agreed that Mr. Gollapudi had complete control over whether Softstar's financial dealings with its employees, whether they received a raise, when they were paid, and how they were paid. (TR. I, p. 124) No one else was responsible for the employee withholding taxes.

Mr. Gollapudi even had conversations regarding withholding taxes with his employees. In 1989, Mr. Gollapudi had a conversation with Ashok Mishra in which Mr. Gollapudi told Mr. Mishra that about one third of his salary would be withheld by Softstar for social security taxes, federal taxes, and state taxes. (TR. I, p. 174–175) As Mr. Mishra testified on direct examination, "he said it has to be sent to Federal Government, federal tax to Federal Government and state to State government, generally on a quarterly basis." (TR. I, p. 176)

These admissions make it clear to the Court that Mr. Gollapudi was well aware of his obligation to make quarterly payments of employee withholding tax to the federal government.

5. *Though Mr. Gollapudi Attempted To Structure Events So That It Appeared He Sought Help From An Accountant Before the IRS Contacted Him, It Is Clear That Only After the IRS Contacted Him In May, 1992 Did Mr. Gollapudi Seek Help From An Accountant.*

As early as 1986, Mr. Gollapudi recognized that there was a problem in the delinquency of the employment taxes. (TR. III, p. 102) Despite his recognition of the problem, he did not attempt to file any returns nor did he seek professional advice. It was not until 1992 that Mr. Gollapudi finally acted to rectify the situation. According to Mr. Gollapudi on direct, he wanted to hire an accountant in 1992 but he waited until after April 15, because he knew the accountant would not be quite as busy. (TR. III, p. 31)

Though Mr. Gollapudi testified on direct examination that the first IRS inquiry about his delinquent filing of Forms 941 and payment of taxes was in August, 1992, (TR. III, p. 36), later, on cross-examination, Mr. Golla-

pudi admitted that prior to the August 1992 call from the IRS, he was contacted by IRS agent Madeline Gillespie in May of 1992. (TR. III, p. 71) This contact was in regard to the need for an affidavit from Softstar verifying the financial information on a W–2 form of a Softstar employee, Mr. Vadakkath. (TR. I, p. 143–145) Therefore, because Mr. Gollapudi did not contact the accountant until June of 1992, this Court finds Mr. Gollapudi's professed desire to rectify the situation to be unconvincing as the Court credits the phone call from the IRS in May of 1992 as the true motivating factor in getting Mr. Gollapudi to the accountant.

### 6. The IRS Spotted Softstar's W–2 Forms As Questionable.

The W–2 forms provided by Mr. Gollapudi to his employees had certain characteristics which made the IRS spot the forms as potentially false. The W–2s were sloppy and the address of the company was listed in Michigan, which was atypical for a New Jersey employee. (TR. I, p. 153)

After viewing the suspicious W–2 form, Ms. Gillespie attempted to contact Softstar at the Michigan address by mail. Her efforts were unavailing as her letter was returned as undeliverable. (TR. I, p. 158)

Next, Ms. Gillespie contacted Softstar in May of 1992 at the New Jersey office and spoke with Mr. Gollapudi who offered no explanation as to why mail was undeliverable to the Softstar corporate headquarters. (TR. I, p. 161) Mr. Gollapudi was evasive in his answers to these questions. Upon further investigation within the IRS, Ms. Gillespie discovered that Softstar had failed to file Forms 941 and failed to remit the funds to the federal government. (TR. I, p. 166)

Mr. Gollapudi's testimony regarding the IRS investigation into the false W–2 forms is further evidence of his attempt to cover his tracks. In relating the details of his meeting with people from the IRS in September 1992 where the fraudulent W–2 forms were discussed, Mr. Gollapudi stated "I didn't use 'false' word myself. You know, when they said, 'is it false,' then I would have said 'yes'." (TR. III, p. 40) Despite this admission, which is collaborated by Mr. Roum's

testimony, Mr. Gollapudi when asked on direct examination at a later point the question "[a]re you telling me now that you did not admit to them that you filed a false return?" responded, "I did not. Yes." (TR. I, p. 40)

Therefore, the Court finds that Mr. Gollapudi intentionally gave false W–2 forms to his employees.

### 7. Mr. Gollapudi Attempted To Make His Check Register Comply With The Quarterly Tax System Requirements Only After Meeting With The Accountant.

After Mr. Gollapudi went to see the accountant, David Karpel, Mr. Gollapudi went back and cleaned up all of the records for the years in question and made new entries. (TR. III, p. 56) Mr. Karpel told Mr. Gollapudi that he needed to go back to all of the prior years and input quarterly payroll entries in June of 1992. (TR. III, p. 56)

Moreover, the different versions of the check registers listed payments to Mr. Gollapudi in different categories. Mr. Gollapudi did not take a regular salary from Softstar but instead he would take checks from the corporate bank account. In 1990, he classified one of the checks he drew from the corporate account as salary originally, according to the check register. (TR. III, p. 65) However, after the accountant suggested to Mr. Gollapudi that he needed to revise the 1987–1992 check registers to show withholding for each quarter, the check drawn as salary in 1990 was reclassified as an advance. (TR. III, p. 65) When confronted with the seeming inconsistency, Mr. Gollapudi changed his justification for the $3000 check several times, calling it a loan given by the company, then calling it a payback for expenses. (TR. III, p. 67–68). Additionally, when the government asked Mr. Gollapudi about the different versions of the check registers, Mr. Gollapudi was extremely evasive about whether or not the date reflected on the records was accurate. (TR. III, p. 62–64)

This Court finds that the changes to the check registers several years past the 1989–1991 fiscal years was evidence of an intent to defraud the federal government.

**8.** *The Money Withheld As Federal Withholding Taxes and FICA Taxes Was Put Into the Softstar General Corporate Account.*

The money that Mr. Gollapudi had withheld from Softstar employees for federal taxes and FICA was put into the general corporate checking account in a bank in Michigan. (TR. III, p. 23) Despite the fact that Mr. Gollapudi testified on direct examination that the money to pay the taxes was always on hand, (TR. III, p. 29), upon cross-examination, Mr. Gollapudi admitted that the balance in the bank account was at times below the amount necessary to pay the taxes. (TR. III, p. 82)

All parties agree that it is not necessary under the law for taxes withheld by an employer to be segregated from other funds. However, all taxes withheld from the wages of an employee are held by the employer in trust for the government. 26 U.S.C. § 7501(a). It is generally recognized that it is not necessary to segregate the money held in trust for the government from general corporate funds. However, "trust fund taxes are for the exclusive use of the government and cannot be used to pay business expenses of the employer." *Collins v. United States,* 848 F.2d 740, 741–42 (6th Cir.1988) citing *Gephart v. United States,* 818 F.2d 469, 472 (6th Cir.1987). "It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business." *Collins,* at 741–742, citing *Thibodeau v. United States,* 828 F.2d 1499, 1506 (11th Cir.1987).

This Court finds the fact that Mr. Gollapudi put the taxes into a general corporate fund which was then used for usual business expenses to be a violation of the public trust and evidence of fraud.

**9.** *Mr. Gollapudi Listed The Large Corporate Account As A Personal Asset and Largely Inflated His Salary.*

Furthermore, Mr. Gollapudi admitted to listing the corporate checking account on a personal mortgage application in 1989. (TR. III, p. 84) Despite the fact that Mr. Gollapudi signed the application under a line that said that the mortgage application was signed under penalties of perjury, Mr. Gollapudi misstated his salary and his assets. (TR. III, p. 86) On cross-examination, Mr. Gollapudi admitted that his income for 1988 was $45,000 and for 1989 was $60,000. (TR. III, p. 90–92). However, on this mortgage application, Mr. Gollapudi listed his income as $8000 a month and his wife's income as $3000 a month, for a combined total of $132,000 a year for the Gollapudis. (TR. III, p. 91)

The listing of the corporate account as a personal asset further discredits Mr. Gollapudi's testimony. The Court does not credit Mr. Gollapudi's testimony that he did not have any intent to "deliberately, wilfully, or purposely not file forms 941 or remit to the Internal Revenue Service," as testified to on direct. (TR. III, p. 50)

Therefore, this Court finds that Mr. Gollapudi was not merely remiss or negligent in filing Forms 941 for Softstar and remitting the funds to the federal government. Mr. Gollapudi knowingly and intentionally violated a known legal duty to file Forms 941 each quarter from 1989–1991. Additionally, this Court finds that Mr. Gollapudi voluntarily and intentionally violated the known legal duty to remit the taxes he had withheld from Softstar's employees. Therefore, this Court finds Defendant Rao Gollapudi guilty of Counts 1–9 of the Indictment.

**C.** *Gollapudi Willfully Violated 26 U.S.C. § 7206(1).*

In order to find Mr. Gollapudi guilty of a violation of § 7206(1), the Government must prove, beyond a reasonable doubt: (1) Mr. Gollapudi made and subscribed a return which was false as to a material matter; (2) The return contained a written declaration that it was made under the penalties of perjury; (3) Mr. Gollapudi did not believe the return to be true and correct as to every material matter; and (4) Mr. Gollapudi false-

ly subscribed to the return willfully, with the specific intent to violate the law. *United States v. Bishop*, 412 U.S. 346, 350, 93 S.Ct. 2008, 2012, 36 L.Ed.2d 941 (1973). It is not necessary under § 7206(1) that the United States establish that any tax was due for the years in question, as § 7206(1) regards merely false statements in tax returns. *United States v. Olgin*, 745 F.2d 263, 272 (3d Cir. 1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985).

Mr. Gollapudi filed federal income tax returns, Forms 1040, for the tax years 1989, 1990, and 1991, with fraudulent Forms W–2 falsely reporting that Softstar had withheld federal income taxes from himself. However, Mr. Gollapudi admitted that to the IRS agent that the W–2s he gave to his employees, which includes himself, were false, so element one is satisfied. The Court finds that Mr. Gollapudi plainly knew that the taxes that the W–2 claimed had been withheld and paid over had not been paid over. These taxes remained in Softstar's corporate checking account, a fact of which Mr. Gollapudi was well aware. The Court finds that Mr. Gollapudi made and subscribed to a false personal income tax return Form 1040 with knowledge that it was false because he knew the taxes for which he claimed substantial tax credits for the years 1989, 1990, and 1991 had not been paid over to the IRS.

The 1989, 1990, and 1991 forms are each signed by Rao Gollapudi. As the law provides, the fact that an individual's name is signed to a federal income tax return is prima facie evidence for all purposes that the return was signed by the person. 26 U.S.C. § 6064. Each of the Forms 1040 contained a jurat which indicated that the return was signed under penalties of perjury. Therefore, the second element is satisfied.

Because Mr. Gollapudi admitted that the W–2s issued by Softstar were false, and because he had that knowledge when he submitted his W–2 with his Form 1040 that the forms were false because the taxes had not in fact been paid over, Mr. Gollapudi clearly did not believe the return to be true and correct as to every matter. Therefore, the only remaining issue, once again, is whether Mr. Gollapudi falsely subscribed to the return

willfully, with the specific intent to violate the law.

As established previously, to prove willfulness, the Government must prove that Mr. Gollapudi acted voluntarily and intentionally in violation of a known legal duty. The Government must show that Mr. Gollapudi was aware of the legal duty to provide truthful information on his federal income tax returns and that he voluntarily and intentionally failed to do so.

Mr. Gollapudi is an educated individual, holding a Bachelors Degree in Chemical Engineering and a Masters Degree in Engineering from India's Institute of Technology. (TR. I, p. 12) He is the President of his own corporation, of which he is the sole shareholder.

When Mr. Gollapudi filed his personal income tax Form 1040, he claimed a tax credit of $6000 for taxes he claimed had been withheld but he knew in fact were not withheld from his "salary." With his Form 1040 he submitted a false statement of withholding, Form W–2.

1. *Mr. Gollapudi's Two Separate Entities Defense Fails Regarding The Fraud In Filing His Personal Income Taxes.*

Mr. Gollapudi attempted to justify the fact that he filed a W–2 form for himself as an employee of Softstar but did not remit the $6000 credited on the W–2 by arguing that he must be considered two separate entities, Mr. Gollapudi, Softstar's President, and Mr. Gollapudi, Softstar's employees. (TR. III, p. 97) This attempted distinction is not simply disingenuous. This testimony is so unworthy of belief that it further undermines the credibility of his previous testimony given to support the absence of willfulness. Mr. Gollapudi had knowledge of the fact that Softstar had not paid over any federal taxes withheld from employees' salaries due to the fact that it was his own intentional and voluntary violation of the duty to pay over the taxes withheld. As a result, when Mr. Gollapudi filed his own W–2 form, he committed an act of fraud.

Therefore, this Court finds that Mr. Gollapudi willfully subscribed to the false return

with the intent to violate the federal tax laws. Mr. Gollapudi was never formally assigned a salary; instead, Mr. Gollapudi maintained control over the all of the funds in the corporate account, including the funds allegedly withheld from his "salary." In addition to benefiting from the false credit for taxes, Mr. Gollapudi was also able to shield Softstar from any unwanted attention by filing false W–2 forms. The record before the Court makes it clear that Mr. Gollapudi willfully filed false W–2 forms with his personal income tax filing Form 1040. Therefore, this Court finds the defendant guilty of Counts 10 to 12 of the Indictment.

## III. CONCLUSION

This Court will enter a judgment of GUILTY on all counts.